CASE NO.

**THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

DANIELLE VICTOR,

Plaintiff

v.

THE UNITED STATES OF AMERICA; ET AL

Defendant

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**JURY TRIAL DEMANDED**

**CASE NO.**

Danielle Victor
In Pro Se
daniellekvictor@gmail.com
4 Loring Road
Methuen, MA 01844
978-857-4885
THE LIGHT OF GOD NEVER FAILS

**TO THE CLERK OF COURT**, Robert M. Farrell, please refer to the following cases which all had Complaints over forty pages long: *B.R. v Fairfax County School Board, Does 1-6 v. Mills, US Dominion v. Powell, Lindell, and Giuliani, Patrick Collins, Inc. v. Does 1-44, Page v. Comey, United States v. Donald Trump, O. Doe v. Trump*, and several more.

**I. INTRODUCTION**

1. This is a civil action for violations of Plaintiff's constitutional and civil rights, including but not limited to retaliation for whistleblowing, gang stalking, covert harassment, torture, attempted murder, and conspiracy to violate Plaintiff's rights. Plaintiff, a whistleblower who exposed corruption and misconduct within the Los Angeles Superior Court, has been subjected to a coordinated, multi-year campaign of harassment and retaliation by Defendants, involving both public and private entities.

2. Beginning in 2021, and continuing through the present day, Plaintiff has been the target of illegal surveillance, remote electronic attacks, and poisoning via electromagnetic frequencies (EMFs), directed energy weapons (DEWs), and other forms of digital and chemical torture. These attacks, intended to intimidate, harm, and ultimately silence Plaintiff for her

whistleblowing activities, have caused significant physical and psychological harm.

3. The retaliatory campaign against Plaintiff was initiated and carried out by individuals and entities, both government and private, with the goal of punishing Plaintiff for exposing corruption and illegal conduct. This campaign has escalated from covert surveillance and digital harassment to overt, coordinated stalking, physical harassment, poisoning, and direct threats to Plaintiff's life.

4. Despite numerous attempts to seek help from law enforcement, government agencies, and medical institutions, Plaintiff has faced consistent obstruction, indifference, and denial of assistance. Defendants, including various law enforcement agencies, have either failed to protect Plaintiff, ignored her pleas for help, or actively participated in the illegal acts against her. Plaintiff has been subjected to repeated attempts at discrediting her, including fabricated claims about her mental health, in an effort to render her testimony inadmissible and prevent her from continuing to pursue legal redress.

5. Plaintiff seeks justice for the harms inflicted upon her and demands accountability from those responsible. Through this lawsuit, Plaintiff requests declaratory and injunctive relief,

as well as compensatory damanges, punitive damages, and treble damages, to remedy the egregious violations of her constitutional and civil rights.

**II. DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

**III. KEY ISSUES**

1. **Whistleblower Retaliation:** Whether the Defendants, acting in concert or individually, retaliated against Plaintiff for her whistleblowing activities regarding public corruption, in violation of Plaintiff's rights under the First Amendment and other applicable whistleblower protection laws.

2. **Gang Stalking and Covert Harassment:** Whether the Defendants, through covert surveillance and coordinated stalking activities, engaged in a campaign of harassment aimed at intimidating and punishing Plaintiff for her whistleblowing, thus violating Plaintiff's right to privacy, freedom from harassment, and protection from cruel and unusual punishment under the Eighth Amendment.

3. **Electronic Harassment and Poisoning:** Whether the Defendants used electromagnetic frequencies (EMFs) and directed energy weapons (DEWs) to intentionally harm Plaintiff, causing

physical and emotional distress, in violation of Plaintiff's rights to be free from torture and cruel treatment, and whether these actions constitute attempted murder.

4. **Conspiracy to Commit Violations of Plaintiff's Rights:** Whether the Defendants conspired to violate Plaintiff's constitutional rights, including but not limited to her rights under the First, Fourth, Eighth, and Fourteenth Amendments, through a coordinated campaign of surveillance, harassment, poisoning, and retaliation against Plaintiff for her role as a whistleblower.

5. **Failure to Protect and Obstruction of Justice:** Whether the Defendants, including law enforcement agencies, government bodies, and private entities, failed to intervene or take action to protect Plaintiff from the illegal acts being committed against her, including obstructing investigations, failing to address Plaintiff's complaints, and falsely discrediting Plaintiff.

6. **Torture, Intentional Infliction of Emotional Distress, and Physical Harm:** Whether the Defendants engaged in conduct that constitutes torture, intentional infliction of emotional distress, and physical harm, in violation of Plaintiff's rights under both federal and state law.

7. **Constitutional and Civil Rights Violations:** Whether the Defendants' conduct has violated Plaintiff's constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments, and whether Defendants are liable for damages for these violations.

## IV. STATE SECRETS AND JUDICIAL REVIEW

1. Plaintiff brings this action in part to expose and obtain redress for unlawful covert operations involving the use of electromagnetic frequency (EMF) radiation, wave manipulation, and other silent weapons as forms of targeted torture, attempted murder, surveillance, and retaliation for Plaintiff's whistleblowing activities. These methods, though often concealed under the guise of national security, have caused Plaintiff extreme physical suffering, psychological torment, economic devastation, and persistent threats to her life and liberty.

2. Plaintiff asserts that any invocation of the state secrets privilege by any Defendant—including the United States Government, its agencies, or agents, must not be permitted to serve as a blanket bar to judicial review, especially where the alleged conduct involves severe constitutional violations including, but not limited to, violations of the First, Fourth, Fifth, and Fourteenth Amendments.

3. The use of EMF radiation and similar technologies against civilians has been acknowledged in multiple public sources, including U.S. military and intelligence documents. For instance:

- The U.S. Department of Defense has long researched directed energy weapons, including microwave and millimeter wave technology. The Active Denial System (ADS), a non-lethal weapon developed by the U.S. military, uses millimeter wave technology to cause an intense burning sensation on the skin. This is publicly acknowledged by the Joint Non-Lethal Weapons Directorate.
- The National Institute of Justice (NIJ), a division of the U.S. Department of Justice, has funded research into "through-wall surveillance", non-contact physiological monitoring, and neurological disruption technologies, often in coordination with defense contractors and federal agencies.
- A 1994 report to the U.S. Air Force Scientific Advisory Board titled New World Vistas: Air and Space Power for the 21st Century discusses future capabilities to manipulate the human nervous system using electromagnetic energy, including the possibility of remotely disrupting thought processes.

- Patent No. 6,011,991, titled Communication system and method including brain wave analysis and/or use of brain activity, issued in 2000, demonstrates publicly disclosed concepts of technology designed to interact with or influence brain activity remotely. Many similar patents have been filed by or assigned to government contractors.

4. Plaintiff alleges that these and other technologies have been weaponized unlawfully by federal agents or affiliated entities in retaliation for her protected whistleblowing speech. The harm she suffered - rashes, burning sensations, breathing difficulty, psychological targeting, surveillance, and poisoning — aligns with the known physiological effects of exposure to directed energy and EMF radiation. The targeting included deliberate manipulation of air quality, digital interference, tampering with smart devices (such as thermostats), and the presence of vehicles and persons engaging in known psychological operations such as gang stalking.

5. The state secrets privilege cannot be used to shield criminal misconduct, extrajudicial assassination attempts, or civil rights violations from judicial scrutiny. As the Supreme Court acknowledged in *United States v. Reynolds, 345 U.S. 1 (1953)*, courts must independently assess the legitimacy of a state secrets claim and may not blindly defer to the executive.

Moreover, in cases involving potential abuse of the privilege, such as *El-Masri v. Tenet, 437 F. Supp. 2d 530 (E.D. Va. 2006)*, courts have recognized the serious consequences of dismissal without full review, especially where plaintiffs allege torture or human rights violations.

6. Plaintiff respectfully requests that the Court decline to dismiss or limit this action on the basis of the state secrets doctrine. The scope of the misconduct alleged, including attempted murder, surveillance abuse, and deprivation of constitutional rights, requires judicial oversight, not executive evasion. The technologies involved are not speculative: they are already part of the U.S. military and law enforcement research landscape, and their misuse against civilians is a growing public concern.

7. Dismissing Plaintiff's claims under the veil of state secrets would constitute a violation of her rights to due process, access to the courts, and the protections guaranteed under the Constitution. If necessary, Plaintiff requests that the Court use alternative protective measures such as in camera review, redacted disclosures, or appointment of special masters to preserve the integrity of the judicial process while balancing legitimate security interests.

8. Plaintiff further asserts that judicial oversight is essential in this matter, and that dismissal of her claims on the grounds of state secrets would constitute an abdication of the judiciary's constitutional role in safeguarding civil liberties and protecting life. Plaintiff therefore respectfully requests that the Court retain jurisdiction over this case and deny any motion to dismiss or obstruct discovery based on unsupported invocations of the state secrets privilege.

9. The technologies and tactics used against Plaintiff—including EMF radiation, forced exposure to harmful environmental conditions, remote interference with personal devices, and targeting by federal or local agents, are not speculative, but observable, repeated, and recorded. The Defendants' intent to use secrecy to silence a whistleblower is a matter of grave constitutional concern and public interest.

**V. JURISDICTION AND VENUE**

1. This Court has original jurisdiction over this action pursuant to **28 U.S.C. §1331**, as this case arises under the Constitution and laws of the United States, including violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

2. Jurisdiction is also conferred under **28 U.S.C. §1346(b)** and the **Federal Tort Claims Act (FTCA), 28 U.S.C. §2671-2680**, as

Plaintiff asserts claims for personal injuries and other damages caused by the wrongful acts and omissions of employees or agents of the United States government, including but not limited to the CIA, FBI, Department of Homeland Security (DHS), Department of Justice (DOJ), and other federal agencies and actors, acting within the scope of their official duties.

3. This Court has jurisdiction under **28 U.S.C. §1343(a)(3)** and **(a)(4)** for Plaintiff's claims seeking redress for the deprivation of rights, privileges, and immunities secured by the Constitution and federal law, including claims brought under **42 U.S.C. §1983, 1985, and 1986.**

4. Jurisdiction is also proper under the **Bivens doctrine,** which authorizes actions for damages against individual federal officials for violations of constitutional rights committed under color of federal authority.

5. This Court further has jurisdiction under **28 U.S.C. §1367(a)** to adjudicate Plaintiff's related state law claims arising from the same common nucleus of operative facts as the federal claims.

6. Venue is proper in the United States District Court for the District of Massachusetts pursuant to **28 U.S.C. §1391(b)(1)** and **(b)(2)**, because one or more Defendants reside or are located in this district, and a substantial part of the events and

omissions giving rise to the claims occurred within this district, including in Boston, Methuen, and Lawrence, Massachusetts.

7. Venue is also proper in this District under **28 U.S.C. § 1402(b)** with respect to Plaintiff's claims against the United States under the FTCA, as Plaintiff resides in Massachusetts and the injuries at issue occurred in part within this jurisdiction.

**VI. PARTIES**

**PLAINTIFF**

1. Plaintiff is an individual currently residing in the Commonwealth of Massachusetts. At all relevant times, Plaintiff was a resident of Los Angeles County, California, residing at Zen Hollywood Apartments located at 1825 N Las Palmas Ave, Los Angeles, California; and a resident of Essex County, Massachusetts residing at 4 Loring Road, Methuen, Massachusetts. At all relevant times, Plaintiff was a whistleblower subjected to unlawful surveillance, stalking, harassment, attempted poisoning, digital intrusion, electronic torture, constitutional violations, and targeted retaliation by federal and state officials, corporate actors, and local law enforcement, in violation of Plaintiff's constitutional, civil, and statutory rights. Plaintiff brings this action in pro se capacity for redress.

**DEFENDANTS**

**1. United States of America**

Defendant United States of America ("USA") is a sovereign government entity, consisting of various federal agencies, offices, and branches of government. The United States is the nation under which the federal government operates, including all constitutional, statutory, and common law protections afforded to its citizens. The United States is responsible for ensuring the protection of constitutional rights, preventing violations, and taking appropriate actions when individuals or entities within its jurisdiction engage in illegal conduct. The United States is named as a defendant pursuant to the **Federal Tort Claims Act (FTCA), 28 U.S.C. §1346(b), 2671-2680,** for the negligent and wrongful acts or omissions of its employees, agencies, and officers acting within the scope of their employment, including participation in or failure to prevent unconstitutional conduct, gang stalking, targeted retaliation, surveillance, electronic harassment, and attempted murder of the Plaintiff. The United States of America is named in this Complaint due to its responsibility in ensuring that federal agencies and entities, such as the Department of Justice, FBI, CIA, and others, uphold the rights of its citizens, including the Plaintiff, who alleges ongoing

violations of constitutional rights, surveillance, hacking, covert harassment, and retaliation. The Plaintiff alleges that the United States has failed to adequately investigate, prevent, or halt the unlawful activities committed by its agents, which have led to continuous harm. Specifically, the Plaintiff claims that federal agencies failed to act on whistleblower protection rights, failed to prevent retaliation, and failed to provide meaningful protection against unlawful surveillance, harassment, and torture, all of which have led to violations of the Plaintiff's civil rights. Therefore, the United States is named in this action due to its failure to take corrective action to prevent these harms.

**2. Central Intelligence Agency**

Defendant the Central Intelligence Agency ("CIA") is an independent agency of the U.S. federal government responsible for gathering intelligence and conducting covert operations in relation to national security. The CIA's jurisdiction includes foreign intelligence gathering, counterintelligence, and supporting efforts to prevent threats against U.S. citizens and interests. Headquartered in Langley, Virginia, the CIA operates both domestically and internationally under the oversight of the Director of National Intelligence. Defendant CIA is named in this Complaint due to its failure to intervene or take action

regarding the unlawful surveillance, harassment, and retaliation perpetrated against the Plaintiff, which includes covert harassment tactics, electronic surveillance, and psychological torture. Plaintiff alleges that the CIA either played a direct role in orchestrating or failed to take reasonable steps to prevent the illegal activities carried out by other defendants, including illegal surveillance, hacking, and poisoning attempts. The Plaintiff further contends that the CIA's failure to stop these actions or investigate the situation in accordance with its duties under U.S. law contributed to the ongoing harm, resulting in the Plaintiff's continued exposure to significant physical and psychological suffering. As a federal agency tasked with national security and the protection of U.S. citizens' rights, the CIA is held accountable for its failure to act in this case.

**3. Federal Bureau of Investigation**

Defendant the Federal Bureau of Investigation ("FBI") is a federal law enforcement agency of the United States government, operating under the jurisdiction of the Department of Justice. Headquartered in Washington, D.C., the FBI is responsible for investigating and enforcing federal laws, including those related to terrorism, cybercrime, organized crime, and civil rights violations. As a key governmental entity, the FBI is

tasked with protecting U.S. citizens and upholding constitutional rights. Defendant FBI is named in this Complaint due to its failure to intervene in or investigate the unlawful activities targeting Plaintiff, including unlawful surveillance, electronic harassment, and retaliation related to whistleblowing activities. The FBI's failure to take action in response to Plaintiff's reports, along with its potential involvement in the conspiracy to harm the Plaintiff, is central to this case. Plaintiff alleges that the FBI either directly participated in or failed to stop the illegal actions committed by other defendants, leading to the Plaintiff's torture, harassment, and attempted murder. As a government agency, the FBI is responsible for addressing these violations and ensuring the protection of constitutional rights for all citizens, including the Plaintiff.

**4. Department of Homeland Security**

Defendant the Department of Homeland Security ("DHS") is a federal executive department of the United States government, headquartered in Washington, D.C. DHS was established to protect the United States from various threats, including terrorism, cyberattacks, and other national security risks. As a key federal agency, DHS is responsible for coordinating and enforcing policies related to immigration, border security, cybersecurity, and law enforcement activities. The DHS and its

personnel have failed to protect Plaintiff from the illegal activities described in this Complaint, including unlawful surveillance, harassment, and retaliation, and failed to intervene in the ongoing conspiracy against Plaintiff. Defendant DHS is named in this Complaint for its involvement or failure to prevent the constitutional violations, civil rights abuses, and other illegal acts perpetrated against Plaintiff, particularly by its failure to protect the Plaintiff from unlawful government surveillance and covert operations targeting the Plaintiff.

**5. Department of Justice**

Defendant the Department of Justice ("DOJ") is a federal executive department of the United States government, headquartered in Washington, D.C. The DOJ is responsible for overseeing and enforcing federal laws, including the protection of civil rights, criminal investigations, and national security matters. The DOJ oversees federal agencies, including the FBI, and provides legal representation for the United States in civil and criminal matters. The actions and omissions of the DOJ, under the leadership of its officials, are integral to the unlawful acts alleged in this Complaint, including the failure to prevent or intervene in the covert surveillance, stalking, retaliation, and torture of Plaintiff. Defendant DOJ is named in this Complaint for its role in facilitating or failing to

address the constitutional violations and criminal acts committed by other federal and state actors involved in the conspiracy against Plaintiff.

**6. Kash Patel, in his official capacity as Director of the FBI**

Defendant Kash Patel ("Patel"), is sued in his official capacity as the Director of the Federal Bureau of Investigation (FBI), a federal law enforcement agency operating under the jurisdiction of the United States Department of Justice. The FBI is headquartered in Washington, D.C., and maintains field offices throughout the United States, including in California and Massachusetts, where the events alleged in this Complaint took place. As Director, Defendant Patel holds supervisory and operational authority over FBI personnel, investigations, and surveillance programs. Plaintiff alleges that under Defendant Patel's leadership, the FBI participated in, authorized, or failed to prevent unlawful acts including covert surveillance, electronic harassment using directed energy weapons (DEWs), stalking, gang stalking, retaliatory actions, attempted murder, and other unconstitutional and tortious conduct. Defendant Patel is further alleged to have violated Plaintiff's rights through willful indifference, policy failures, and conspiratorial

coordination with other federal, state, and private actors as described throughout this Complaint.

**7. Pamela Jo Bondi, in her official capacity as Attorney General of the United States, an office that is part of the executive branch of the federal government.**

Defendant Pamela Jo Bondi ("Bondi"), as Attorney General, she is responsible for overseeing the enforcement of federal law, including but not limited to, matters of civil rights, federal criminal law, and the actions of federal agencies such as the Department of Justice. In her official capacity, she is sued for her role in the actions that contributed to the Plaintiff's harm, including failure to prevent or address the ongoing violations of Plaintiff's rights, resulting in ongoing gang stalking, covert harassment, and retaliation against a whistleblower. Bondi's position and decisions are central to the claims of constitutional and statutory violations that form the basis of this action. She operates out of Washington, D.C.

**8. City of Los Angeles**

Defendant City of Los Angeles ("Los Angeles") is a municipal government entity organized under the laws of the State of California, with its principal offices located in Los Angeles, California. The City is responsible for overseeing its various departments, including the Los Angeles Police Department (LAPD),

Los Angeles Fire Department (LAFD), and Los Angeles Department of Water and Power (LADWP), all of which are named as separate defendants in this Complaint. The City of Los Angeles is sued in its official capacity for its role in authorizing, enabling, or failing to prevent a pattern of coordinated surveillance, covert harassment, electronic torture, and retaliatory actions against the Plaintiff, which occurred within its jurisdiction. These acts include complicity or acquiescence in unlawful gang stalking activities, deployment or tolerance of directed energy weapons, and other misconduct perpetrated under color of state law. The City's failure to investigate, intervene, or discipline involved parties contributed directly to the constitutional, statutory, and tort-based violations set forth in this Complaint.

**9. Los Angeles Police Department**

Defendant Los Angeles Police Department ("LAPD") is a municipal law enforcement agency operating under the authority of the City of Los Angeles, California. LAPD is responsible for maintaining public safety and enforcing laws within the city. It is sued in its official capacity as a governmental entity for its direct participation in, willful negligence toward, or deliberate indifference to unlawful surveillance, stalking, harassment, attempted poisoning, and targeted retaliation against the

Plaintiff. LAPD officers and affiliates, acting under color of law, are alleged to have contributed to or facilitated unconstitutional conduct and criminal acts, including gang stalking, abuse of authority, deprivation of rights, and failure to protect the Plaintiff from ongoing harm. These actions form the basis for numerous constitutional and statutory violations alleged in this Complaint.

**10. Los Angeles Fire Department**

Defendant Los Angeles Fire Department ("LAFD"), is a municipal emergency services agency operating under the authority of the City of Los Angeles, California. LAFD is responsible for fire prevention, emergency medical response, and disaster management within the city. It is sued in its official capacity as a government entity for its involvement in, knowledge of, or failure to intervene in covert activities, including the use of emergency services infrastructure to monitor, harass, or otherwise endanger the Plaintiff. LAFD's conduct, including aiding or acquiescing in acts of stalking, directed energy exposure, or neglecting to provide aid during incidents of poisoning or distress, materially contributed to the Plaintiff's ongoing harm and is actionable under constitutional and statutory provisions related to civil rights, bodily integrity, and public safety.

**11. Los Angeles Department of Water and Power**

Defendant Los Angeles Department of Water and Power ("LADWP"), is a publicly owned municipal utility operating under the authority of the City of Los Angeles, California. LADWP is responsible for providing water and electricity services to residents and businesses in Los Angeles. It is sued in its official capacity as a government entity for its role in either facilitating or failing to prevent acts contributing to the Plaintiff's targeted harassment, covert surveillance, electromagnetic exposure, and other forms of psychological and physical torture. LADWP's actions or omissions were a substantial factor in causing the Plaintiff's harm and violated constitutional protections and federal statutes, including those concerning unlawful surveillance, environmental harm, and civil rights deprivations.

**12. Southern California Gas Company**

Defendant Southern California Gas Company ("SoCalGas"), is a public utility corporation headquartered in California and operating primarily within the state. It is responsible for the distribution and maintenance of natural gas services to residential and commercial customers. SoCalGas is sued in its corporate capacity for its role in enabling or failing to prevent environmental hazards, targeted harassment, or chemical

exposures as part of the ongoing campaign of covert retaliation, stalking, and attempted harm against the Plaintiff. SoCalGas's actions or omissions contributed to the Plaintiff's endangerment, suffering, and deprivation of rights under federal law, including those protected by the Constitution, the Toxic Substances Control Act, and other applicable statutes.

**13. City of Boston**

Defendant City of Boston ("Boston") is a municipal government entity located in the Commonwealth of Massachusetts. As a local governmental body, it oversees city departments, including law enforcement and emergency services, and is responsible for the conduct of its employees and agents acting under color of law. The City of Boston is sued in its official capacity for its involvement in, knowledge of, or failure to intervene in acts of targeted harassment, electronic surveillance, stalking, and retaliatory misconduct committed against the Plaintiff. These acts contributed to the Plaintiff's physical and psychological injuries, violations of constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, and multiple statutory violations alleged throughout this Complaint.

**14. City of Methuen**

Defendant City of Methuen ("Methuen"), is a municipal government entity located in the Commonwealth of Massachusetts. As a local

governmental body, it is responsible for overseeing public agencies, including the Methuen Police Department, and administering municipal services within its jurisdiction. The City of Methuen is sued in its official capacity for its direct involvement in, knowledge of, or failure to prevent acts of unlawful surveillance, gang stalking, targeted harassment, and retaliatory conduct carried out against the Plaintiff. These actions contributed to ongoing constitutional violations and statutory breaches, including deprivation of rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, and violations of federal civil and criminal laws.

**15. Methuen Police Department**

Defendant Methuen Police Department ("Methuen PD"), is a municipal law enforcement agency located in the City of Methuen, in the Commonwealth of Massachusetts. It is a governmental entity tasked with enforcing local and state laws and maintaining public safety within its jurisdiction. The Methuen Police Department is sued in its official capacity for its participation in, facilitation of, or willful failure to prevent acts of gang stalking, targeted surveillance, harassment, attempted poisoning, and retaliatory conduct directed at the Plaintiff. These acts constitute violations of the Plaintiff's constitutional rights under the Fourth, Fifth, Eighth, and

Fourteenth Amendments, as well as violations of various federal criminal statutes and civil protections.

**16. Lawrence Police Department**

Defendant Lawrence Police Department ("Lawrence PD"), is a municipal law enforcement agency operating in the City of Lawrence, in the Commonwealth of Massachusetts. It is a governmental entity responsible for local policing and public safety within its jurisdiction. The Lawrence Police Department is sued in its official capacity for its involvement in, contribution to, or failure to prevent ongoing gang stalking, covert harassment, surveillance, intimidation, and retaliatory acts carried out against the Plaintiff, including actions that amount to violations of the Plaintiff's constitutional, statutory, and civil rights. The department operates under the authority of the City of Lawrence and the laws of the Commonwealth of Massachusetts.

**17. Massachusetts State Police**

Defendant Massachusetts State Police is a governmental law enforcement agency operated by the Commonwealth of Massachusetts. It is a state-level policing authority responsible for enforcing state laws, safeguarding public safety, conducting criminal investigations, and ensuring the constitutional rights of individuals throughout the

Commonwealth. The agency operates under the executive branch of the Massachusetts government and is tasked with maintaining law and order across various municipalities, highways, and state jurisdictions. The Massachusetts State Police is named as a defendant in this action due to its failure to investigate, intervene in, or prevent the unlawful and retaliatory conduct alleged by Plaintiff. Plaintiff alleges that the Massachusetts State Police failed to respond appropriately to credible reports of criminal misconduct, including coordinated surveillance, gang stalking, electronic harassment, physical endangerment, and attempted poisoning. Despite having jurisdiction and legal authority to act, the agency neglected to take steps to protect Plaintiff's rights or pursue individuals or entities responsible for these acts. Plaintiff contends that members of the Massachusetts State Police either directly participated in or willfully ignored ongoing violations of Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights, among others. Their inaction contributed to the prolonged pattern of psychological, physical, and financial harm endured by Plaintiff. Accordingly, Defendant Massachusetts State Police is sued in its official capacity as a governmental entity for its role in enabling or failing to halt these ongoing violations.

**18. Commonwealth of Massachusetts**

Defendant Commonwealth of Massachusetts is a sovereign state and governmental entity within the United States, with its principal offices located in Boston, Massachusetts. It is responsible for overseeing and administering the functions of state government, including law enforcement, public health, civil rights protections, and the enforcement of state and federal laws within its jurisdiction. The Commonwealth acts through its various agencies, departments, and officials and is subject to liability under certain federal statutes, including the Federal Tort Claims Act and 42 U.S.C. § 1983, where applicable. The Commonwealth of Massachusetts is named as a defendant in this action due to its failure to prevent, stop, or remedy the unlawful surveillance, harassment, torture, attempted poisoning, stalking, and retaliation to which Plaintiff was subjected. Plaintiff alleges that multiple agencies and officials under the Commonwealth's authority, including the Massachusetts State Police, the Methuen State Police, and local law enforcement departments, failed to act in response to Plaintiff's repeated reports of criminal and unconstitutional conduct. Furthermore, Plaintiff alleges that state officials, including the Attorney General and other supervisory entities, exhibited deliberate indifference to Plaintiff's rights and safety, thereby contributing to the continued deprivation of constitutional and

statutory protections. Defendant Commonwealth of Massachusetts is sued in its official capacity as a government entity for its failure to protect Plaintiff's civil rights, for its complicity in unlawful acts committed by its employees and agents, and for its liability under applicable federal statutes governing governmental misconduct, whistleblower retaliation, and failure to prevent violations of constitutional law.

**19. Attorney General Andrea Joy Campbell**

Defendant Andrea Joy Campbell ("Campbell") is the Attorney General of the Commonwealth of Massachusetts and is sued in her official capacity as the chief law enforcement officer and legal representative of the state. As Attorney General, Campbell is responsible for overseeing the enforcement of state laws, protecting the rights of residents, prosecuting violations of civil rights, and responding to complaints of governmental misconduct. She operates out of the Office of the Attorney General located in Boston, Massachusetts. Defendant Campbell is named as a defendant in this action due to her failure, in her official capacity, to investigate, prevent, or intervene in the ongoing constitutional and statutory violations alleged by the Plaintiff, despite having the authority and responsibility to do so. Plaintiff alleges that the Office of the Attorney General was placed on notice, directly or constructively, of the

repeated and escalating incidents of gang stalking, electronic harassment, unlawful surveillance, attempted poisoning, and whistleblower retaliation, yet failed to take meaningful action to investigate or prosecute those responsible. Defendant Campbell's failure to act in the face of credible reports of criminal conduct and constitutional violations demonstrates deliberate indifference and contributes to the deprivation of Plaintiff's rights under the U.S. Constitution, the Federal Tort Claims Act, and various civil rights statutes. Plaintiff seeks to hold Defendant Campbell accountable for her role in allowing the ongoing harm and for the lack of oversight and enforcement by the office she leads.

**20. Leah B. Foley, U.S. District Attorney for Massachusetts**

Defendant Leah B. Foley ("Foley") is the United States District Attorney for the District of Massachusetts and is sued in her official capacity as the chief federal prosecutor for the U.S. Department of Justice within the Commonwealth of Massachusetts. As U.S. District Attorney, Foley is responsible for prosecuting violations of federal law, representing the United States in civil and criminal litigation, and upholding the Constitution and federal statutes. Her office is headquartered in Boston, Massachusetts. Defendant Foley is named as a defendant in this action due to her failure, in her official capacity, to

investigate, prosecute, or otherwise respond to repeated and credible reports submitted by the Plaintiff regarding ongoing violations of federal law and constitutional rights. These violations include but are not limited to organized gang stalking, covert surveillance, electronic harassment, attempted poisoning, and retaliation in connection with whistleblowing activities. Despite the Plaintiff's efforts to bring these matters to the attention of her office, no meaningful action was taken to protect the Plaintiff or to enforce applicable federal laws. Plaintiff contends that Defendant Foley, by failing to discharge her prosecutorial duties and failing to initiate or support any investigation into the misconduct described, allowed a pattern of criminal conduct and civil rights violations to continue unabated. This inaction constitutes deliberate indifference and official complicity, contributing to the physical, psychological, and financial harm suffered by the Plaintiff. The Plaintiff seeks to hold Defendant Foley accountable for this failure and for the resulting damages under the Constitution and applicable statutory law.

**21. Gavin Newsom, in his full capacity as the Governor of California**

Defendant Gavin Newsom ("Newsom") is the Governor of the State of California and is sued in his full official capacity. As

Governor, Newsom serves as the chief executive officer of the State of California and is responsible for overseeing state agencies, enforcing California laws, and ensuring the safety and constitutional rights of all residents within the state. His principal office is located in Sacramento, California. Defendant Newsom is named as a defendant in this action due to his failure, in his official capacity, to intervene, investigate, or take any corrective action in response to the Plaintiff's repeated complaints and reports of unlawful surveillance, stalking, electronic harassment, attempted poisoning, and organized retaliation carried out by various California-based individuals, entities, and agencies. These actions began while the Plaintiff resided in California and continued thereafter, with no meaningful response from the executive branch of the state. The Plaintiff alleges that the State of California, under the leadership of Defendant Newsom, either failed to prevent or actively contributed to a pattern of human rights abuses and constitutional violations targeting the Plaintiff for whistleblowing and protected speech. By failing to exercise oversight over state agencies such as the LAPD, LAFD, LADWP, and the California Department of Rehabilitation, Defendant Newsom enabled a coordinated campaign of gang stalking and psychological and physical torture to persist. The Plaintiff

seeks to hold Defendant Newsom accountable in his official capacity for this deliberate indifference and gross neglect of duty, which resulted in significant injury and trauma in violation of federal and constitutional protections.

**22. George Gascón, in his full capacity as the Los Angeles District Attorney**

Defendant George Gascón ("Gascón") is the District Attorney of Los Angeles County, California, and is sued in his full official capacity. As District Attorney, Gascón is the chief prosecutor for Los Angeles County, responsible for enforcing California criminal law, prosecuting crimes within the jurisdiction, and ensuring equal justice under the law. His principal office is located in Los Angeles, California. Defendant Gascón is named in this action due to his failure, in his official capacity, to investigate or prosecute numerous complaints and reports made by the Plaintiff concerning stalking, unlawful surveillance, electronic harassment, attempted poisoning, intimidation, and targeted retaliation. These acts were allegedly committed by both public and private actors operating in Los Angeles County, under circumstances suggesting organized criminal conspiracy and violations of the Plaintiff's constitutional and statutory rights. The Plaintiff contends that Defendant Gascón either ignored or affirmatively refused to pursue investigations

despite credible evidence presented by the Plaintiff involving coordinated acts of physical, psychological, and financial harm. This failure to act, and failure to use the powers of the District Attorney's office to protect a whistleblower and citizen victimized by conspiracy and corruption, constitutes deliberate indifference and tacit approval of the crimes committed. The Plaintiff seeks to hold Defendant Gascón accountable in his official capacity for his failure to uphold the duties of his office and for contributing to the continuation of unlawful conduct targeting the Plaintiff.

**23. Apple Inc., a California Corporation**

Defendant Apple Inc. ("Apple") is a multinational technology corporation incorporated in the State of California, with its principal place of business located in Cupertino, California. Apple Inc. is sued as a private corporate entity under applicable federal and state laws. It designs, manufactures, and markets consumer electronics, software, and online services, including the iPhone, Mac, iOS operating systems, iCloud, and related platforms. Apple Inc. is named as a defendant in this action for its alleged role in facilitating, enabling, or failing to prevent the unlawful surveillance, hacking, stalking, and data exploitation targeting the Plaintiff. The Plaintiff contends that Apple's devices, operating systems, and cloud-

based infrastructure were used by third parties and/or insiders to conduct warrantless monitoring, location tracking, and interception of private communications in violation of Plaintiff's constitutional rights and federal law. Despite Plaintiff's efforts to report and seek assistance regarding these intrusions and suspected vulnerabilities in Apple's ecosystem, Apple Inc. failed to act, investigate, or implement appropriate safeguards to prevent or cease the ongoing violations. The Plaintiff further alleges that Apple either negligently allowed or knowingly permitted its products and systems to be weaponized in a coordinated campaign of harassment and technological abuse directed at the Plaintiff. As a result, Apple Inc. is sued for its contributory role and corporate negligence in relation to the Plaintiff's injuries, damages, and ongoing harm stemming from these violations.

**24. Nest Labs, Inc., a Delaware Corporation**

Defendant Nest Labs, Inc. ("Nest Labs") is a private corporation incorporated in the State of Delaware, with its principal place of business located in Palo Alto, California. Nest Labs is a subsidiary of Google LLC and is sued in its corporate capacity under federal and state law. Nest Labs specializes in smart home products, including internet-connected security cameras, smoke detectors, thermostats, and other devices capable of

transmitting and receiving data. Nest Labs is named as a defendant in this action based on its role in manufacturing and distributing surveillance-capable technology that was allegedly weaponized and misused to monitor, stalk, and harass the Plaintiff within their private residence and personal space. The Plaintiff alleges that Nest Labs' devices were either exploited or intentionally deployed in a manner that contributed to covert surveillance, audio and visual monitoring, and other privacy violations without consent or lawful authority. The Plaintiff alleges that Nest Labs devices were intentionally used as weapons to distribute illegal toxins to cause life threatening injuries to Plaintiff. Plaintiff further asserts that Nest Labs had a duty to ensure its products were not used as instruments of surveillance or harassment, particularly when such misuse was reported or foreseeable. Plaintiff contends that Nest failed to take any remedial actions or implement safeguards that could have prevented or mitigated the constitutional and statutory violations suffered, and that its negligence and indifference to the misuse of its technology constitute a direct and proximate cause of the ongoing harm. Accordingly, Nest Labs is sued for its contributory negligence, complicity, and failure to prevent the technological abuse that enabled unlawful surveillance, invasion of privacy, and psychological torture.

**25. Moss Management Services, Inc., a California Domestic Stock Corporation**

Defendant Moss Management Services, Inc. ("Moss Management") is a California domestic stock corporation with its principal place of business located in Los Angeles, California. It is sued in its corporate capacity under both federal and state law. Moss Management is a property management company that operates and manages residential properties, including Zen Hollywood Apartments, where many of the events giving rise to this Complaint occurred. Moss Management is named as a defendant due to its role in enabling and facilitating the covert harassment, surveillance, attempted poisoning, and other targeted attacks against the Plaintiff while residing at a property under its control. Plaintiff alleges that Moss Management was either aware of or willfully blind to repeated incidents involving gang stalking, use of directed energy weapons (DEWs & EMFs), electronic harassment, and targeted retaliation. These incidents included unlawful entries, tampering with personal property, manipulation of utilities, and failure to act on reports of harassment or suspicious activity within the premises. Plaintiff contends that Moss Management failed to fulfill its legal and ethical obligations to ensure tenant safety and protect the Plaintiff's constitutional rights while on the property.

Instead, Plaintiff alleges that Moss Management staff either participated in or knowingly allowed a hostile and dangerous living environment to persist, in furtherance of a conspiracy to retaliate against the Plaintiff for protected whistleblower activity. Accordingly, Moss Management is sued for its direct involvement, negligence, and complicity in violating the Plaintiff's civil, statutory, and constitutional rights, as outlined in the Causes of Action.

**26. Jason Fenescey, an individual**

Defendant Jason Fenescey ("Fenescey") is an individual believed to reside in the State of California. He is sued in his individual capacity for his role in the events giving rise to this Complaint. At all relevant times, Fenescey was affiliated with Moss Management Services & 1840 Highland Partners, LLC, serving in a position of authority with responsibility over operations at Zen Hollywood Apartments in Los Angeles, California. Plaintiff alleges that Jason Fenescey directly participated in, facilitated, or had knowledge of the covert harassment, unlawful surveillance, attempted poisoning, and other forms of psychological and physical torture inflicted upon Plaintiff while residing at the property. Plaintiff further alleges that Fenescey deliberately ignored reports of criminal misconduct and harassment, thereby enabling and contributing to

the ongoing pattern of gang stalking, directed energy attacks, and retaliatory conduct. Fenescey is named as a defendant for his personal involvement and failure to act in a manner consistent with his professional and legal obligations to ensure tenant safety and comply with federal and state civil rights protections. Plaintiff alleges that Fenescey's actions and omissions were intentional, malicious, and in furtherance of a broader conspiracy to silence and punish Plaintiff for protected whistleblower activity. Accordingly, Fenescey is sued for his direct and personal involvement in violations of the Plaintiff's constitutional, civil, and statutory rights.

27. **Wells Fargo Bank, National Association, a California Foreign Stock Corporation**

Defendant Wells Fargo Bank, National Association ("Wells Fargo") is a foreign stock corporation organized under the laws of the State of California, with its principal place of business in San Francisco, California, and operating branches nationwide, including in Massachusetts. As a federally chartered financial institution, Wells Fargo provides deposit accounts, lending, and related banking services. Wells Fargo is sued in its corporate capacity for its role in unlawfully restricting, freezing, and depleting Plaintiff's deposit accounts without notice or lawful justification, in direct retaliation for Plaintiff's protected

whistleblower disclosures. Plaintiff alleges that Wells Fargo's actions were part of a coordinated scheme, together with other Defendants, to financially coerce and confine Plaintiff at Zen Hollywood Apartments by denying her access to funds necessary for relocation, medical care, housing, and legal defense. These acts constitute breach of contract, conversion, unjust enrichment, negligence, violations of consumer protection statutes, and interference with commerce under the Hobbs Act (18 U.S.C. §1951). By withholding critical financial resources, Wells Fargo prevented Plaintiff from securing safe housing and essential services, exacerbating her vulnerability to ongoing surveillance, harassment, and attempts on her life. Accordingly, Wells Fargo Bank, National Association is named as a Defendant for its direct participation in financial misconduct and the deprivation of Plaintiff's statutory and constitutional rights.

28. Lemonade, Inc., a Delaware Corporation

Defendant Lemonade, Inc. ("Lemonade") is a publicly held insurance technology corporation incorporated in the State of Delaware, with its principal place of business in New York, New York. Lemonade develops and offers renters, homeowners, and other insurance products through an online platform, and operates in multiple states, including California and

Massachusetts. Lemonade is sued in its corporate capacity for its role in wrongfully denying or delaying Plaintiff's insurance claims for emergency relocation and temporary housing following credible reports of life-threatening harm, poisoning, and structural tampering at Zen Hollywood Apartments. Plaintiff alleges that Lemonade's conduct was part of a coordinated scheme, together with other Defendants, to trap Plaintiff in a dangerous environment, thereby exacerbating her exposure to ongoing surveillance, harassment, and attempts on her life. These actions constitute bad faith denial of insurance benefits, breach of contract, and violations of state and federal consumer protection statutes. By refusing to provide coverage or assistance despite repeated and documented requests, Lemonade, Inc. prevented Plaintiff from obtaining safe temporary housing, significantly worsening her physical and psychological injuries. Accordingly, Lemonade is named as a Defendant for its direct participation in financial and contractual misconduct and the deprivation of Plaintiff's rights under applicable laws.

**29. HD Supply Inc., a Georgia Corporation**

Defendant HD Supply, Inc. ("HD Supply") is a publicly traded corporation organized under the laws of the State of Georgia, with its principal executive offices in Atlanta, Georgia. It is a leading supplier of industrial products and services—including

plumbing, HVAC, electrical, and safety equipment—to construction and maintenance professionals across North America. HD Supply is sued in its corporate capacity for its role in the supply chain and distribution of products and systems that were repurposed or misused by other Defendants to facilitate the Plaintiff's electronic and environmental harassment. Specifically, Plaintiff alleges that HD Supply provided building maintenance materials such as specialized wiring, power management devices, and sensor equipment that were knowingly or recklessly used to create EMF/ DEW radiation installations, tamper with safety systems (including smoke and fire detectors), and enable covert surveillance within Plaintiff's residence. By failing to implement reasonable controls, warnings, or monitoring of how its products were deployed in a high-risk environment, HD Supply contributed to the sustained physical injuries, psychological trauma, and deprivation of the Plaintiff's rights. As such, HD Supply, Inc. is named as a Defendant for its direct and negligent involvement in the chain of distribution that resulted in the Plaintiff's harm.

**30. Jeff Greene, an individual**

Defendant Jeff Greene ("Greene") is an individual and real estate investor residing in Beverly Hills, California. He is the sole or controlling owner of the real property known as Zen

Hollywood Apartments, located at 1825 N Las Palmas Ave, Los Angeles, California, through entities such as 1840 Highland Partners, LLC and Concord Ventures, Inc. Defendant Greene is sued in his individual capacity for his role in orchestrating or permitting the hostile environment and targeted attacks against Plaintiff. Plaintiff alleges that Greene directed or approved property modifications and technology deployments, such as radiator installations, utility tampering, and smart-home device configurations, that facilitated covert surveillance, electronic harassment (including EMF/DEW exposure), and poisoning. Greene is further alleged to have refused reasonable safety requests (including emergency relocation) and to have colluded with property managers, contractors, and public officials to retaliate against Plaintiff for her whistleblowing activities. By leveraging his property interests and directing management to pursue or condone harmful modifications and denials of assistance, Greene contributed to breaches of Plaintiff's constitutional rights, violations of federal statutes (including 18 U.S.C. §§ 241, 242, 1513), and common-law torts. Accordingly, Jeff Greene is named as a Defendant for his direct and supervisory involvement in the conspiracy to stalk, harass, and attempt to kill the Plaintiff.

**31. Paul Marciano, an individual**

Defendant Paul Marciano ("Marciano") is an individual and business investor residing in Los Angeles, California. He is a partial owner and financial backer of Concord Ventures, Inc., one of the entities that held an ownership interest in Zen Hollywood Apartments at 1825 N Las Palmas Ave, Los Angeles, California, during the time Plaintiff resided there. Defendant Marciano is sued in his individual capacity for his role in concealing his financial interest in the property and allowing or directing property management and contractors to create a hostile environment for the Plaintiff. Plaintiff alleges that Marciano's undisclosed stake in the building was known to certain Defendants but kept hidden from Plaintiff, who had notified management of her ongoing litigation against him and his affiliates for sexual assault and discrimination. Marciano is further alleged to have benefitted from, and tacitly approved, the deployment of covert surveillance, electronic harassment, and environmental tampering designed to punish and intimidate the Plaintiff in retaliation for her whistleblowing. By failing to disclose his conflict of interest and by leveraging his investor authority to facilitate or condone the illegal acts committed against the Plaintiff, Marciano contributed to the deprivation of Plaintiff's constitutional and statutory rights, including her rights to privacy, bodily

integrity, and due process. Accordingly, Paul Marciano is named as a Defendant for his direct and conspiratorial involvement in the targeted harassment and attempted harm of the Plaintiff.

**32. Concord Ventures, Inc., a Delaware Corporation**

Defendant Concord Ventures, Inc. ("Concord Ventures") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California. During the relevant period, Concord Ventures, Inc. held an ownership interest in Zen Hollywood Apartments, located at 1825 N Las Palmas Ave, Los Angeles, California. Concord Ventures, is sued in its corporate capacity for its role in directing or permitting conditions at Zen Hollywood that facilitated Plaintiff's covert surveillance, electronic harassment, and poisoning. Plaintiff alleges that Concord Ventures, Inc. made or approved decisions regarding property management, such as selecting maintenance contractors, installing or upgrading HVAC and smart-home equipment, and coordinating security measures, that were used to monitor, torture, and retaliate against Plaintiff for her whistleblowing and litigation activities. By failing to disclose its investors' conflicts of interest and by authorizing or acquiescing in harmful property modifications and surveillance tactics, Concord Ventures contributed to violations of Plaintiff's constitutional rights (including unlawful search

and seizure and cruel and unusual punishment), numerous federal criminal statutes, and common-law torts. Accordingly, Concord Ventures is named as a Defendant for its direct involvement in the conspiracy to stalk, harass, and attempt to harm Plaintiff.

**33. 1840 Highland Partners, LLC, a California domestic Limited Liability Company**

Defendant 1840 Highland Partners, LLC ("1840 Highland Partners") is a domestic limited liability company organized under the laws of the State of California, with its principal place of business in Los Angeles, California. During the relevant period, 1840 Highland Partners was the legal entity holding title to Zen Hollywood Apartments, located at 1825 N Las Palmas Ave, Los Angeles, California. 1840 Highland Partners is sued in its corporate capacity for its role in owning and overseeing the property where Plaintiff was subjected to covert surveillance, electronic harassment, environmental tampering, and attempted poisoning. Plaintiff alleges that 1840 Highland Partners exercised ultimate control over property management policies and maintenance operations, and either knowingly permitted or directed the installation and misuse of building systems (including HVAC, smart-home devices, and security infrastructure) to facilitate a campaign of gang stalking, targeted torture, and retaliatory confinement. By failing to

safeguard the premises, address tenant complaints, or prevent the malicious use of property systems against Plaintiff, 1840 Highland Partners contributed to violations of the Plaintiff's constitutional rights, numerous federal criminal statutes, and common-law torts. Accordingly, 1840 Highland Partners is named as a Defendant for its direct and supervisory involvement in the conspiracy to stalk, harass, and harm the Plaintiff.

**34. Lucent Technologies, Inc., a Virginia Corporation**

Defendant Lucent Technologies, Inc. ("Lucent Tech") is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business in Murray Hill, New Jersey. Lucent Tech designs, manufactures, and services telecommunications and networking equipment, including switching systems, fiber-optic infrastructure, and wireless base stations, used by both public agencies and private entities. Lucent Tech is sued in its corporate capacity for its role in supplying and maintaining the telecommunications infrastructure that was knowingly or recklessly repurposed by other Defendants to conduct warrantless surveillance, electronic stalking, data interception, and the covert deployment of directed-energy harassment against the Plaintiff. Plaintiff alleges that Lucent Techs' equipment and services were integral to establishing the networks, both wired and wireless, used to monitor her

movements, intercept her communications, and coordinate multi-agency stalking operations across California and Massachusetts. Despite receiving reports or having reason to know that its systems were being exploited for unlawful monitoring and retaliation against a protected whistleblower, Lucent Tech failed to implement reasonable safeguards, refuse service, or notify authorities. By neglecting to secure its infrastructure and by continuing to provide support to complicit actors, Lucent Tech materially contributed to the Plaintiff's constitutional injuries, statutory violations, and ongoing torture. Accordingly, Lucent Tech is named as a Defendant for its direct and negligent involvement in the conspiracy to surveil, harass, and harm the Plaintiff.

## VII. FACTUAL ALLEGATIONS

1. In or around 2021, Plaintiff relocated to Zen Hollywood Apartments, located at 1825 N Las Palmas Avenue, Los Angeles, California. The property is owned by Jeff Greene, who also owns 1840 Highland Partners, LLC. Concord Ventures, Inc. and Moss Management Services, Inc. were involved in the property's management and/or ownership during Plaintiff's tenancy.

2. Prior to moving in, Plaintiff was asked to submit full banking information, including data associated with Plaintiff's Wells Fargo Bank accounts. Despite being self-employed without

traditional employment documentation, Plaintiff was approved for tenancy.

3. Plaintiff requested unit 324 but was instead placed in unit 224, which Plaintiff later discovered to be a secluded unit with no neighbors above or beside it. This placement was intentional and strategic.

4. At the time of moving in, Plaintiff was actively involved in litigation in Los Angeles Superior Court against Southwest Wine & Spirits, LLC, Paul Marciano, Maurice Marciano, Guess?, Inc., et al., which included allegations of sexual assault and discrimination.

5. Plaintiff later discovered that Paul Marciano was a partial owner or investor in Zen Hollywood Apartments through Concord Ventures. Plaintiff had unknowingly moved into a property associated with a named defendant in her pending litigation, and no such conflict or connection was disclosed by property management, despite Plaintiff informing them of her pending lawsuit.

6. In July 2021, Plaintiff discovered evidence of public corruption within the Stanley Mosk Courthouse in Los Angeles involving judges, law firms, attorneys, and arbitration companies. In August 2021, Plaintiff began whistleblowing

efforts to expose the corruption and seek redress for the mishandling of her case.

7. Following Plaintiff's whistleblowing efforts, conditions at Zen Hollywood escalated into a hostile and dangerous environment that nearly cost Plaintiff her life. In September 2021, Plaintiff began experiencing persistent and unexplained noise disturbances. The property management front desk was replaced by new individuals including Fenescey. The security for Zen Hollywood was all ex-military and ex-cons.

8. Upon inquiry, the property manager, Fenescey, informed Plaintiff that a new radiator system had been installed which caused a buzzing noise but refused to provide the name or details of the system. The noise persisted day and night without explanation. When Plaintiff asked other tenants if they were experiencing issues with the new radiator system and buzzing, not a single tenant had the same experience. It was strictly for Plaintiff's unit only.

9. Plaintiff began experiencing increasing difficulty breathing inside her unit and was forced to sleep with windows open or on her patio. Use of digital devices, smart home devices, air conditioner, or home appliances caused Plaintiff to experience burning skin, irritated eyes, and rashes, with symptoms worsening over time.

10. Plaintiff was in so much fear she slept with a tazor and a knife under her pillow, and set her alarm for every ten minutes to make sure she didn't die in her sleep and was still breathing.

11. Plaintiff exhibited additional symptoms known to be consistent with prolonged exposure to high-frequency electromagnetic fields (EMFs) and directed energy weapons (DEWs), including but not limited to: headaches, pressure sensations in the skull, nausea, dizziness, cognitive fog, involuntary muscle contractions, nerve pain, and unexplained burning or vibrating sensations throughout the body. These symptoms would intensify at specific times of day and often aligned with activity from nearby maintenance rooms or power panels.

12. Plaintiff's symptoms were not isolated, nor psychosomatic, and mirrored those experienced by victims of known government-sanctioned EMF weaponry and wave-based harassment operations, as documented in both declassified federal reports and whistleblower accounts.

13. These technologies, including microwave auditory effect devices; millimeter wave radiation, and remote neural monitoring; have been historically employed by intelligence agencies to target, monitor, and neutralize individuals

considered "threats," particularly journalists, activists, whistleblowers, and litigants involved in high-profile or politically sensitive matters.

14. Plaintiff discovered that her HVAC system and connected devices, including a Lucent Technologies panel, were remotely accessible and altered. An unfamiliar IP address was found linked to her Netstat thermostat system. Plaintiff believes this equipment was weaponized to emit modulated EMF and radio-frequency signals as a method of intimidation and physical degradation. Plaintiff alleges that defendants, including government entities, used EMF radiation and airborne toxins to harm and torture her.

15. In this case, Plaintiff asserts that defendants, individually and in conspiracy with one another, used such technology and covert tactics to harm Plaintiff as a direct result of her litigation and whistleblowing activities.

16. The psychological toll from this prolonged EMF exposure included chronic sleep deprivation, hypersensitivity to electronics, confusion, emotional instability, and disassociation, each consistent with known effects of sustained directed energy attacks. These symptoms, while devastating, were part of a broader campaign to destabilize Plaintiff mentally, isolate her socially, and undermine her credibility in court.

17. Plaintiff contacted the LAFD multiple times between September and October 2021 to check the unit for carbon monoxide and radiation. The same officers responded each time, regardless of time of day, and no issues were ever reported.

18. Plaintiff contacted SoCal Gas, who responded with a company representative and a Zen Hollywood security guard. Plaintiff was asked to sign suspicious documents and taken to the garage for a meter reading. Plaintiff was then instructed to accompany them to the building's roof for further testing.

19. Plaintiff, sensing imminent danger, declined to go to the roof and returned to her unit with her dog. Plaintiff believes the defendants intended to harm or kill her and stage it as a suicide, noting that there is no legitimate reason for a gas company customer to be taken to the roof.

20. On or about October 18, 2021, Plaintiff confronted Greene, Fenescey, and others, directly accusing them of causing her harm. At that time, Plaintiff held insurance through Lemonade and made over 32 calls seeking relocation to a hotel for safety. Both Lemonade and Greene refused to assist.

21. Conditions in the unit became unbearable, and Plaintiff was forced to gather her evidence into a suitcase and retreat to the building lobby. Attempts to leave the property were impeded

by a new warning light on her vehicle stating that the gas tank was loose, despite 10 years of incident-free ownership.

22. Plaintiff noticed surveillance by multiple vehicles with tinted windows. Exhausted and with bloodshot eyes, both Plaintiff and her dog were physically affected by the exposure in the unit. Plaintiff realized she hadn't slept in almost twenty-four hours.

23. Plaintiff parked her car in front of Zen Hollywood instead of the parking garage and remained in the lobby until morning. Plaintiff contacted her uncle, John, to pick her up and return her to Massachusetts. Plaintiffs uncle John was located in Santa Barbara, California. As she waited, her tongue swelled severely, impairing her ability to speak and swallow. Plaintiff believed her life was in imminent danger.

24. Zen Hollywood security staff called an ambulance, falsely claiming Plaintiff had suffered an Adderall overdose, despite having no access to Plaintiff's medical history. Three unmarked vehicles with agents wearing earpieces arrived on site. Attempts were made to force Plaintiff into an ambulance and separate her from her dog.

25. The LAFD officers who arrived on the scene were the same officers that had been to her apartment previously, several

times. Plaintiff said "You guys again?" The officers responded "Yes, us again."

26. Plaintiff refused to get into the ambulance and refused to give them her dog. Though unwell at the time, she got into her vehicle which was parked out front and drove to Ralphs on Sunset Blvd. A friend of Plaintiff picked her up at Ralphs.

26. Plaintiff escaped in her vehicle and sought refuge with a friend at Urth Café. While there, she observed multiple individuals pretending to eat or speak on phones while maintaining surveillance. Two sets of firefighters and, later, police officers attempted to detain Plaintiff under a 72-hour psychiatric hold.

27. Plaintiff retained composure and avoided involuntary detention. She believes this tactic was an effort to render her testimony non-credible, cause psychological harm, or stage a suicide.

28. Plaintiff's family called the Los Angeles Fire Department where an officer told Gabi, Plaintiff's twin sister, "Your sister is very smart."

29. Plaintiff ultimately waited at her friend Cassie's salon until her uncle arrived to pick her up. Plaintiff and her Uncle John went back to Zen Hollywood to pack up her belongings so she could get out of California as soon as possible.

30. Plaintiff's car keys had gone missing at this point, Victor knew the Defendants had taken them. Plaintiff's set of keys included her Zen Hollywood mail key. Plaintiff asked Fenescey for her spare key and to which he responded "Everyone has a second mail key, except for you." The Defendants restricted Plaintiff's access to her mail.

31. When Plaintiff's uncle John was in the lobby later, by himself, Fenescey said to him "We just wanted what was best for her." Confirming the Defendants plan to illegally get her on a psychiatric hold.

32. Between August and October 2021, Plaintiff's dog experienced repeated unexplained illnesses, believed to be caused by toxic exposure in the unit. Plaintiff spent hundreds of dollars on vet bills. Both Plaintiff and her dog have developed skin tags on their skin from the exposure of lethal toxins by Defendants, which were surgically removed for Caesar.

33. On October 18, 2021, Plaintiff had called the LAFD to her apartment unit because the burns on her skin were so bad. The personnel who had come acknowledged visible burns but refused to test for radiation or toxins. The personnel stated "The burns are bad but not that bad." Then proceeded to advice her not to go to the hospital as it was busy.

34. Plaintiff provided emergency responders with her Massachusetts primary care doctor's information and expressed fear of courts, police, fire personnel, and medical professionals due to ongoing targeting.

35. During this time frame Wells Fargo emptied out Plaintiff's bank accounts, closed them, and when calling to find out what was going was advised by Wells Fargo employees that her accounts were "restricted" and she was not allowed access to them.

36. Plaintiff recorded multiple videos of Fenescey, Greene, and maintenance, the Defendants said on camera their concerns for her "mental health" and threatened that if she continued to act irrationally they would call the cops and get her on a 72-hour hold. Plaintiff knew they were saying this and revealing their plan which she got all on camera.

37. Fenescey had maintenance of Zen Hollywood change all her batteries to HD supply products including the fire detectors. These supplies from HD supply are hazardous and the plant was indeed intentional.

37. Upon returning to Massachusetts, Plaintiff was subjected to ongoing gang stalking. Vehicles drove down her street flashing lights or with one headlight out to instill fear. The Defendants were intended to create conditioned and

unconditioned stimuli with the Plaintiff to establish a fear based mentality for Plaintiff. Plaintiff reported the behavior to Methuen Police, who responded dismissively and failed to investigate. In fact and officer from the Methuen PD came over and informed Plaintiff that he was recording on his body camera. Plaintiff explained everything that had happened and was happening and he responded by advising her to give up seen these people are so "powerful". Plaintiff called Methuen PD about gang stalking as well. Methuen PD has never investigated or prevented.

38. In August 2022, following Plaintiff's filing of a legal brief in federal court, she was trapped by two vehicles in her sister's parking garage. Occupants of one vehicle verbally assaulted her with profanities and threats including "die" "why can't you just die" "cunt". Plaintiff reported the incident to Lawrence Police Department. The Lawrence PD refused to take the report over the phone and told the Plaintiff to come into the station.

39. When Plaintiff visited the police station with her sister to file a report, she was taken to a back room, questioned by three officers, and threatened with psychiatric detention without cause. Plaintiff escaped before the officers

could act. This all happened while Plaintiff's sister was sitting in the car.

40. Plaintiff informed her sister of what occurred, and recognized that she could no longer trust local police, fire, court, or medical institutions. Plaintiff believes that coordinated efforts were made to destroy her credibility and silence her.

41. Gang stalking has continued in Massachusetts.

42. The Los Angeles Department of Water and Power (LADWP) tampered with Plaintiff's water supply. When questioned after arriving back in Massachusetts LADWP refused to answer any questions.

43. Upon returning to Massachusetts Plaintiff called SoCal Gas about her usage which showed increase activity August - October, they advised Plaintiff that they would not answer any questions without legal.

44. Plaintiff's weight dropped from 125 pounds to 109 pounds during her residence at Zen Hollywood, which she attributes to ongoing exposure to toxins and radiation in her unit, used in a coordinated campaign of physical, psychological, and digital assault.

45. EMF and DEWs are still being used through Plaintiff's technology as she has recorded videos of her skin and labored breathing recently using her laptop and phone. The threats to Plaintiff's life are on going.

**VIII. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Violation of the Fourth Amendment to the U.S. Constitution**

**(Unlawful Search and Seizure)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Fourth Amendment protects individuals from unreasonable searches and seizures by the government and its agents.

3. Plaintiff alleges that federal and state government actors, including but not limited to the FBI, DHS, LAPD, LAFD, and Massachusetts state and local police departments, unlawfully surveilled Plaintiff without a warrant or legal justification.

4. Plaintiff was subjected to covert monitoring through electronic means including EMF radiation, DEWs, hacked smart devices (including Nest thermostats), and physical stalking by unmarked vehicles and individuals posing as civilians.

5. These actions were carried out without a judicial warrant, probable cause, or Plaintiff's consent.

6. Plaintiff further alleges unlawful seizure of personal digital data through hacking, surveillance, and tampering with Plaintiff's bank accounts and devices.

7. These acts constitute a violation of Plaintiff's Fourth Amendment rights.

8. Plaintiff seeks declaratory judgment that her rights were violated, injunctive relief to prevent future violations, and compensatory and punitive damages.

**SECOND CAUSE OF ACTION**

**Violation of the Fifth Amendment to the U.S. Constitution (Due Process)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law.

3. Plaintiff alleges she was deprived of property through the unauthorized freezing, depletion, and restriction of her Wells Fargo bank accounts.

4. Plaintiff further alleges deprivation of liberty and life interests through covert radiation poisoning, stalking, and attempts to institutionalize her without cause or legal process.

5. Government actors failed to provide any legal procedure, notice, or opportunity to contest these actions.

6. These deliberate actions, in retaliation for Plaintiff's whistleblowing, were designed to harm or destroy her credibility, health, and livelihood.

7. These acts constitute a violation of Plaintiff's Fifth Amendment right to due process.

8. Plaintiff seeks declaratory relief, compensatory and punitive damages.

**THIRD CAUSE OF ACTION**

**Violation of the Fourteenth Amendment (Equal Protection and Due Process)**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Fourteenth Amendment extends due process and equal protection under the law to all persons within the jurisdiction of the United States.

3. Plaintiff alleges that state actors, including LAPD, LAFD, LADWP, California Department of Rehabilitation, and the Massachusetts police departments, targeted her with discriminatory and retaliatory conduct due to her status as a whistleblower and prior litigant in a civil rights case.

4. Plaintiff was denied equal protection of the laws when police departments failed to act on her credible reports of stalking, poisoning, and harassment.

5. Instead, officials attempted to label Plaintiff as mentally unstable to discredit her claims and facilitate institutionalization.

6. This pattern of selective enforcement and denial of protection violates the Fourteenth Amendment.

7. Plaintiff seeks declaratory judgment, injunctive relief, and compensatory and punitive damages.

**FOURTH CAUSE OF ACTION**

**Conspiracy Against Rights - 18 U.S.C. §241**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §241 prohibits two or more persons from conspiring to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of their constitutional rights.

3. Plaintiff alleges a conspiracy among various government officials, private entities, and individuals to suppress her First, Fourth, Fifth, and Fourteenth Amendment rights through intimidation, stalking, attempted institutionalization, and physical harm.

4. Acts included EMF radiation poisoning, DEW attacks, hacking, surveillance, and retaliation for whistleblowing.

5. Plaintiff's attempt to report judicial corruption and retaliation were met with coordinated state-sponsored harassment.

6. This constitutes a direct violation of 18 U.S.C. §241.

7. Plaintiff seeks treble damages, injunctive and declaratory relief, and referral for criminal prosecution.

**FIFTH CAUSE OF ACTION**

**Deprivation of Rights Under Color of Law - 18 U.S.C. §242**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §242 criminalizes the willful deprivation of constitutional rights by anyone acting under color of law.

3. Defendants acting as government agents or in official capacity used their authority to detain, threaten, monitor, and harm Plaintiff without due process.

4. These actions included attempts to place Plaintiff under psychiatric hold, dismissing credible complaints, and failing to investigate her reports of being poisoned and stalked. In addition to failing to investigate her reports made about public corruption.

5. These violations were committed under color of state and federal law, in furtherance of a coordinated retaliation.

6. Plaintiff seeks full accountability, damages, and criminal referrals.

**SIXTH CAUSE OF ACTION**

**Hate Crimes Based on Actual or Perceived Traits - 18 U.S.C. §249**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. This statute prohibits willfully causing bodily injury (or attempting to do so) because of actual or perceived race, color, religion, national origin, gender, sexual orientation, gender identity, or disability.

3. Plaintiff believes she was targeted, in part, based on her gender and perceived vulnerability as a female whistleblower.

4. Plaintiff believes she was targeted, in part, based on perceived race and color and perceived as a "black" whistleblower.

5. The coordinated campaign of torture, harassment, and physical harm meets the standard for hate-based criminal retaliation.

6. Plaintiff seeks damages and criminal enforcement under this statute.

**SEVENTH CAUSE OF ACTION**

**Attempt to Commit Murder - 18 U.S.C. §1113**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1113 prohibits attempts to commit murder within the United States jurisdiction.

3. Plaintiff alleges multiple attempts on her life through the use of directed energy weapons, EMF radiation, poisoning via air vents, and tampering with her car's fuel system.

4. These acts were coordinated and deliberate, particularly in response to her whistleblowing.

5. These attempts were further supported by intentional interference with emergency aid (e.g., fire department refusing to test her unit, police department refusing to take a report).

6. Plaintiff seeks full legal redress, referral to criminal authorities, and damages.

**EIGHTH CAUSE OF ACTION**

**Conspiracy to Commit Murder - 18 U.S.C. §1117**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. This statute makes it a crime for two or more persons to conspire to commit murder.

3. Plaintiff alleges that government agents, building management, utility companies, and third parties acted in concert with the intention of murdering her via covert means to silence her.

4. This includes orchestrated poisoning, psychological torture, and the attempt to institutionalize her to neutralize her testimony.

5. Plaintiff seeks declaratory judgment, compensatory damages, and a criminal referral.

**NINTH CAUSE OF ACTION**

**Criminal Street Gang Enhancement - 18 U.S.C. §521**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. Section 521 allows for enhanced penalties for crimes committed by criminal street gangs engaged in a pattern of illegal activity.

3. Plaintiff alleges the existence of a network of individuals acting in concert as part of an organized stalking and harassment operation, which constitutes a de facto criminal enterprise or gang.

4. These actors included local law enforcement, state officials, and contractors paid or incentivized to follow, harass, and endanger Plaintiff.

5. This organized effort targeted Plaintiff's liberty, health, and mental state.

6. Plaintiff seeks enhanced penalties and civil damages for acts committed by these organized groups.

**TENTH CAUSE OF ACTION**

**Tampering with a Consumer Product - 18 U.S.C. §1365**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. § 1365 criminalizes the intentional tampering with a consumer product.

3. Plaintiff alleges that individuals, including members of law enforcement, private entities, and management personnel at residential buildings, intentionally tampered with her smart home devices, water and/or food, and personal items.

4. This included poisoning Plaintiff's food and drink, as well as poisoning her environment through directed energy weapons, leading to bodily injury and psychological harm.

5. Plaintiff seeks declaratory judgment, compensatory damages, and criminal referrals under this statute.

**ELEVENTH CAUSE OF ACTION**

**Interference with Commerce by Threats or Violence (Hobbs Act) - 18 U.S.C. §1951**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1951 prohibits the interference with commerce by threats or violence, including extortion.

3. Plaintiff alleges that her personal and professional life was intentionally disrupted through the unlawful surveillance, poisoning, and harassment coordinated by private entities, including Wells Fargo and Apple, Inc.

4. These acts interfered with Plaintiff's financial and professional stability, including the wrongful freezing of her bank accounts and restrictions on access to personal funds and property.

5. Plaintiff seeks declaratory judgment, compensatory damages, and criminal referrals for extortion or interference with commerce.

**TWELFTH CAUSE OF ACTION**

**Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises - 18 U.S.C. §1952**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1952 criminalizes the use of interstate commerce or communication facilities to promote illegal activities, including racketeering or organized crime.

3. Plaintiff alleges that various state and federal agencies, in collusion with private entities such as Wells Fargo and Apple, engaged in interstate travel to stalk, harass, and monitor Plaintiff's movements.

4. This conduct, including the use of technology, stalking, and the manipulation of Plaintiff's personal life, constitutes an organized effort aimed at destroying Plaintiff's career and personal well-being.

5. Plaintiff seeks declaratory judgment, compensatory damages, and criminal enforcement.

**THIRTEENTH CAUSE OF ACTION**

**Violent Crimes in Aid of Racketeering Activity - 18 U.S.C. §1959**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1959 criminalizes the commission of violent crimes in furtherance of racketeering.

3. Plaintiff alleges that government and private actors coordinated violent and unlawful acts, including EMF radiation torture, poisoning, physical harassment, and illegal surveillance, as part of a larger effort to harm Plaintiff and suppress her whistleblower activities.

4. These actions were carried out by a group acting in concert, seeking to obstruct justice and silence a whistleblower.

5. Plaintiff seeks declaratory judgment, compensatory damages, and criminal referrals for racketeering activities.

**FOURTEENTH CAUSE OF ACTION**

**Definition of Racketeering Activity - 18 U.S.C. §1961**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1961 provides definitions for racketeering activities under the Racketeer Influenced and Corrupt Organizations (RICO) Act.

3. Plaintiff alleges that a criminal enterprise or racketeering organization, including state actors and private entities, engaged in a coordinated campaign of harassment, stalking, surveillance, and attempted murder to destroy Plaintiff's life and credibility as a whistleblower.

4. The enterprise used various means of criminal activity, including harassment, poisoning, and electronic surveillance, to intimidate and injure Plaintiff.

5. Plaintiff seeks declaratory judgment, compensatory and punitive damages, and criminal referral for violations of the RICO Act.

**FIFTEENTH CAUSE OF ACTION**

**Prohibited Activities (RICO Violations) - 18 U.S.C. §1962**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1962 makes it illegal for any individual or group involved in a pattern of racketeering activity to operate or control an enterprise.

3. Plaintiff alleges that the coordinated acts of stalking, electronic harassment, and poisoning were carried out by an enterprise or group engaged in racketeering.

4. The conspiracy included state agents, private contractors, and other individuals acting in concert to suppress Plaintiff's First Amendment rights and prevent her from further whistleblowing.

5. Plaintiff seeks declaratory judgment, compensatory damages, and criminal referrals for violations under RICO.

**SIXTEENTH CAUSE OF ACTION**

**Federal Protection of Civil Rights - 18 U.S.C. §702**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §702 makes it a crime to deny or interfere with an individual's civil rights under color of law.

3. Plaintiff alleges that the federal government, including the FBI, DOJ, and other officials, violated her civil rights by failing to intervene and protect her from unlawful surveillance, stalking, poisoning, and retaliation as a whistleblower.

4. These actions, including the use of government resources to spy on and harass Plaintiff, constitute interference with her right to freely exercise her rights under the Constitution.

5. Plaintiff seeks declaratory judgment, compensatory damages, and criminal referral for violations of civil rights under color of law.

**SEVENTEENTH CAUSE OF ACTION**

**Attempt and Conspiracy to Commit Fraud - 18 U.S.C. §1349**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1349 criminalizes conspiracy to commit fraud, particularly involving fraudulent schemes that harm individuals.

3. Plaintiff alleges that private actors, including financial institutions like Wells Fargo, conspired to financially harm Plaintiff by wrongfully freezing her accounts, denying her access to her own funds, and restricting her ability to manage her financial affairs.

4. This conspiracy, in furtherance of a scheme to defraud Plaintiff, violated her legal rights and caused substantial harm.

5. Plaintiff seeks compensatory damages and criminal referrals for violations of this statute.

**EIGHTEENTH CAUSE OF ACTION**

**Retaliating Against a Witness, Victim, or Informant - 18 U.S.C. §1513**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1513 prohibits retaliation against individuals for providing information to law enforcement or testifying in judicial proceedings.

3. Plaintiff alleges that the government and private actors, including law enforcement and corporate entities, retaliated against her for whistleblowing about corruption, fraud, and illegal activities.

4. The retaliation included harassment, stalking, poisoning, surveillance, and the manipulation of legal systems to intimidate Plaintiff and destroy her credibility.

5. Plaintiff seeks criminal referrals, compensatory damages, and full accountability for these retaliatory acts.

**NINETEENTH CAUSE OF ACTION**

**Destruction, Alteration, or Falsification of Records in Federal Investigations or Bankruptcy - 18 U.S.C. §1519**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1519 criminalizes the destruction, alteration, or falsification of records in relation to federal investigations.

3. Plaintiff alleges that key evidence, including her financial records and medical files, were tampered with, altered, or destroyed in an effort to suppress information related to the unlawful surveillance and retaliation she faced.

4. These actions impeded Plaintiff's ability to pursue justice and file valid complaints.

5. Plaintiff seeks full accountability for these acts of record tampering, compensatory damages, and criminal enforcement.

**TWENTIETH CAUSE OF ACTION**

**Obstruction of Correspondence - 18 U.S.C. §1702**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1702 prohibits the obstruction or delay of correspondence by any means.

3. Plaintiff alleges that her mail and communications were deliberately tampered with, delayed, or interfered with by defendants in an effort to prevent her from reporting crimes, seeking help, or filing official complaints.

4. Plaintiff seeks compensatory damages, criminal referral for obstruction, and a court order preventing further interference with her communications.

**TWENTY-FIRST CAUSE OF ACTION**

**Violation of the Toxic Substances Control Act (TSCA)- 15 U.S.C. §2601 et seq.**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Toxic Substances Control Act (TSCA) is a federal law intended to regulate the introduction and use of toxic chemicals, and to protect the public from unreasonable risks of injury to health or the environment associated with chemical substances.

3. The TSCA prohibits the manufacture, distribution, use, or disposal of chemical substances in a way that may present an unreasonable risk to human health or the environment.

4. Plaintiff alleges that one or more Defendants, including government agencies, building management, and private actors, deliberately exposed Plaintiff to hazardous substances, unknown

chemicals, and potentially unregulated toxic agents, including electromagnetic radiation, airborne chemicals, or poisons.

5. These exposures occurred in residential and public environments under conditions indicating knowing or reckless disregard for Plaintiff's health and safety.

6. Plaintiff further alleges a failure of relevant agencies (such as the EPA or local public health officials) to investigate or intervene despite multiple incidents of harm and evidence of deliberate contamination or poisoning.

7. Plaintiff asserts that these acts constitute violations of the TSCA, contributing to Plaintiff's physical injuries, emotional trauma, and interference with basic human rights.

8. Plaintiff seeks injunctive relief, compensatory and punitive damages, and enforcement referrals for civil and criminal liability under TSCA.

**TWENTY-SECOND CAUSE OF ACTION**

**Violation of 18 U.S.C. §208 - Acts Affecting a Personal Financial Interest by Government Officers or Employees**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §208 is a federal criminal statute that prohibits federal officers and employees from participating

personally and substantially in any government matter in which they, their family, or associates have a financial interest.

3. The statute is designed to prevent corruption, conflicts of interest, and abuse of public office for personal gain.

4. Plaintiff alleges that certain federal officials and employees, including but not limited to members of the FBI, DOJ, and intelligence agencies, took or failed to take actions concerning Plaintiff's whistleblower disclosures, surveillance, and abuse based on undisclosed financial or institutional interests.

5. These actions included the decision to surveil, stalk, silence, or discredit Plaintiff, who had raised allegations of public corruption involving wealthy and influential parties, including real estate developers and individuals tied to financial or political power.

6. Plaintiff alleges that the failure to investigate or protect her from attempted murder, poisoning, stalking, or gang harassment was influenced by government actors' conflicts of interest—such as affiliations with Concord Ventures, Paul Marciano, Jeff Greene, or other parties Plaintiff had named in litigation.

7. By acting in matters where they or their associates had financial stakes in silencing or discrediting Plaintiff, these

officials violated §208 and undermined Plaintiff's rights, safety, and access to justice.

8. Plaintiff seeks a finding of liability, declaratory relief, referral for criminal investigation, and compensatory and punitive damages arising from the unlawful participation of conflicted government officers in official matters affecting her life and liberty.

**TWENTY-THIRD CAUSE OF ACTION**

**Violation of 18 U.S.C. § 175 - Prohibition on the Possession or Use of Biological Agents or Toxins as Weapons**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §175 criminalizes the development, production, transfer, acquisition, retention, or possession of any biological agent, toxin, or delivery system for use as a weapon.

3. This statute was enacted as part of the Biological Weapons Anti-Terrorism Act of 1989 and is designed to prevent the use of biological substances to harm individuals or populations, particularly in acts of terrorism, targeted violence, or covert biological warfare.

4. Plaintiff alleges that Defendants—including but not limited to government actors, law enforcement entities, private corporations, and individual agents—participated in a

coordinated scheme to poison, injure, and attempt to murder Plaintiff through the use of toxic biological or chemical substances.

5. While residing at Zen Hollywood Apartments in Los Angeles, California, Plaintiff began experiencing severe and escalating symptoms consistent with chemical or biological exposure, including burning skin, difficulty breathing, throat swelling, and severe physical deterioration, which were also suffered by Plaintiff's dog.

6. Plaintiff observed that substances were being pumped through her apartment's vents, HVAC system, and/or water supply. These substances caused burns, rashes, and required veterinary intervention for her pet.

7. Maintenance staff changed devices such as fire detectors to HD Supply brand units without Plaintiff's consent or knowledge; these devices and other technologies may have been delivery mechanisms for hazardous agents or toxins.

8. SoCal Gas employees and security guards attempted to lure Plaintiff to the roof under suspicious circumstances, which Plaintiff believes was part of a plot to stage a fatal incident.

9. Plaintiff contacted the Los Angeles Fire Department and requested inspection for radiation or biological toxins but was

refused assistance. The Department also dismissed visible burn injuries caused by the exposure.

10. Following these events, Plaintiff experienced ongoing illness, weight loss, and symptoms consistent with toxic exposure, despite having no prior history of such health issues.

11. Plaintiff alleges that Defendants unlawfully possessed, deployed, or facilitated the deployment of hazardous biological agents or chemical toxins with the intent to intimidate, coerce, or kill her in retaliation for her whistleblowing and legal activity.

12. Plaintiff further alleges that this conduct constitutes a violation of 18 U.S.C. §175 because the substances were used or intended for use as weapons to cause injury, fear, or death in a targeted campaign of retaliation.

13. Plaintiff seeks a finding of liability under 18 U.S.C. §175, referral for criminal investigation, and an award of compensatory and punitive damages for the physical and psychological harm endured.

**TWENTY-FOURTH CAUSE OF ACTION**

**Violation of 18 U.S.C. §1001 – False Statements, Concealment, or Fraud by Government Officials or Agents**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1001 criminalizes knowingly and willfully falsifying, concealing, or covering up a material fact, making materially false, fictitious, or fraudulent statements or representations, or making or using any false writing or document knowing it contains materially false or fraudulent statements in any matter within the jurisdiction of the executive, legislative, or judicial branch of the U.S. Government.

3. This statute is intended to ensure honesty in dealings with federal agencies and to prevent government corruption, obstruction of justice, and abuse of public trust through deception or concealment.

4. Plaintiff alleges that numerous government actors and agencies— including but not limited to the FBI, CIA, Department of Homeland Security (DHS), Department of Justice (DOJ), and other federal and state law enforcement bodies—knowingly submitted false reports, concealed evidence, or made materially misleading statements concerning Plaintiff's complaints of stalking, poisoning, surveillance, EMF and DEW-based attacks, and targeted retaliation.

5. Plaintiff repeatedly submitted reports and pleas for help to federal and state agencies detailing torture, unlawful surveillance, EMF/DEW exposure, attempted murder, and organized

gang stalking. These reports were ignored, misrepresented, or falsely dismissed as baseless or delusional without any investigation or proper review.

6. On information and belief, government officials and agents deliberately concealed the existence of surveillance programs, domestic harassment campaigns, and technologies used to target Plaintiff, despite knowing their operation and scope.

7. In communications with law enforcement, Plaintiff was often told that no investigation was pending, or that there was no evidence to support her claims—despite Plaintiff having provided clear documentation, symptoms, witness accounts, and physical evidence.

8. Such statements and omissions were materially false and intended to obstruct Plaintiff's access to justice, to protect agency actors and contractors from liability, and to prevent legal and public scrutiny of unconstitutional covert programs.

9. False entries in case logs, dispatch records, public statements, and internal reports amounted to an official cover-up of widespread and unlawful conduct involving retaliation, electronic harassment, and biological exposure.

10. Defendants' actions in submitting false reports, misrepresenting Plaintiff's condition or credibility, and

concealing material facts from courts, agencies, and the public fall squarely within the prohibitions of 18 U.S.C. §1001.

11. Plaintiff alleges that such misconduct was intentional, malicious, and carried out as part of a larger conspiracy to violate her constitutional rights, obstruct justice, and perpetuate her suffering and endangerment.

12. Plaintiff seeks a finding that the involved officials and agencies violated 18 U.S.C. §1001, referral for criminal investigation, and compensatory and punitive damages for the violations of due process and public trust.

**TWENTY-FIFTH CAUSE OF ACTION**

**Violation of 18 U.S.C. §1505 – Obstruction of Proceedings Before Departments, Agencies, and Committees**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1505 criminalizes any act that corruptly, or by threats or force, or by any threatening communication, influences, obstructs, or impedes (or endeavors to do so) the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or any inquiry or investigation by either House of Congress or a committee thereof.

3. This statute is designed to protect the integrity and independence of federal agency proceedings, investigations, or inquiries from external coercion, intimidation, or deceptive interference.

4. Plaintiff alleges that multiple defendants, including federal agencies such as the FBI, CIA, DHS, and DOJ, as well as individual officials and private actors, knowingly and intentionally obstructed and interfered with proceedings, complaints, and investigations initiated by Plaintiff in pursuit of legal remedies and protections from ongoing torture, harassment, and surveillance.

5. Plaintiff submitted numerous formal complaints and requests for investigations to the FBI, DOJ, DHS, and other federal entities describing serious crimes including attempted murder, EMF/DEW-based torture, stalking, poisoning, and whistleblower retaliation.

6. Instead of protecting Plaintiff's rights or conducting lawful investigations, certain individuals within these agencies conspired to suppress Plaintiff's claims, destroy or conceal evidence, misclassify her reports, and dissuade her from pursuing further legal action or participation in investigations.

7. Plaintiff alleges that this obstruction included internal falsification of records, discouraging outside oversight, delaying or rerouting critical agency correspondence, and concealing key facts from reviewing officials.

8. Plaintiff further believes that efforts were made to prevent her from participating in or accessing congressional inquiries, whistleblower protections, or investigations into misconduct, especially regarding covert surveillance programs or misuse of technology.

9. Defendants' conduct resulted in the stalling, sabotage, or abandonment of legal and investigatory proceedings that would have otherwise held perpetrators accountable and brought relief to Plaintiff.

10. These obstructive acts were carried out willfully and maliciously to silence Plaintiff, to protect institutional liability, and to enable the continuation of criminal activities targeting her.

11. The obstruction of agency proceedings deprived Plaintiff of her legal rights, delayed justice, exacerbated her suffering, and contributed to the escalation of the violence and torture against her.

12. Plaintiff seeks a finding that the conduct described above constitutes a violation of 18 U.S.C. §1505, and seeks

compensatory and punitive damages for the denial of justice and obstruction of lawful agency proceedings.

**TWENTY-SIXTH CAUSE OF ACTION**

**Violation of 18 U.S.C. §1510 – Obstruction of Criminal Investigations**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1510 prohibits willfully endeavoring by means of bribery, misrepresentation, intimidation, or force to obstruct the communication of information relating to a violation of any criminal statute of the United States to a criminal investigator.

3. This statute is intended to protect the integrity of criminal investigations by ensuring that individuals are able to freely and truthfully report federal crimes without interference, retaliation, or obstruction.

4. Plaintiff alleges that multiple Defendants, including but not limited to the FBI, CIA, DHS, DOJ, LAPD, Massachusetts law enforcement agencies, and private actors, willfully and systematically interfered with her attempts to report serious criminal conduct to federal investigators.

5. Plaintiff repeatedly attempted to alert federal agencies about ongoing crimes against her, including attempted murder,

EMF/DEW torture, organized stalking, targeted poisoning, unlawful surveillance, hacking, harassment, and conspiracy.

6. Rather than acting upon these reports, certain agents and officials deliberately prevented her complaints from being processed, ignored substantial evidence, misdirected her communications, or caused her to be falsely classified, discredited, or targeted for retaliation.

7. In some instances, Plaintiff's attempts to report crimes were met with threats, coercion, or countermeasures aimed at silencing her, discouraging her from continuing to report, or destroying her credibility before investigators.

8. These actions were done to prevent the exposure of the criminal enterprise targeting Plaintiff, to protect agency or institutional liability, or to enable the continuation of the criminal conduct she was reporting.

9. Plaintiff further alleges that certain parties engaged in a pattern of deceptive conduct, including impersonating investigators, tampering with communications, or misleading her about the status of investigations.

10. These efforts effectively obstructed criminal investigations that would have otherwise exposed and prosecuted the ongoing conspiracy against Plaintiff.

11. The obstruction severely impaired Plaintiff's ability to obtain protection, justice, and relief from the ongoing torture, retaliation, and coordinated targeting she continues to endure.

12. Plaintiff seeks a finding that the actions described above constitute a violation of 18 U.S.C. §1510, and seeks appropriate compensatory and punitive damages for the obstruction and resulting harm.

**TWENTY-SEVENTH CAUSE OF ACTION**

**Violation of 18 U.S.C. §1512 – Tampering with a Witness, Victim, or Informant**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1512 criminalizes acts intended to intimidate, threaten, corruptly persuade, or otherwise interfere with a witness, victim, or informant, with the intent to influence, delay, or prevent their testimony or reporting of criminal conduct.

3. This statute is designed to ensure that victims and witnesses can report crimes and participate in judicial proceedings free from coercion, intimidation, or retaliation.

4. Plaintiff is a whistleblower and a victim of criminal acts including surveillance, poisoning, electronic harassment,

hacking, attempted murder, and organized stalking, which she repeatedly attempted to report to authorities and courts.

5. Defendants, including various governmental bodies, law enforcement entities, and private actors, engaged in a coordinated campaign of intimidation, psychological torture, surveillance, misinformation, and harassment with the intent to prevent Plaintiff from reporting crimes, testifying truthfully, or continuing to pursue legal recourse.

6. Such actions included:

a. Threats of involuntary psychiatric holds (i.e., 72-hour detentions);

b. False accusations including drug use or mental instability;

c. Physical and psychological torture through EMF/DEW technologies and toxic exposure;

d. Attempts to discredit and isolate Plaintiff socially and institutionally;

e. Surveillance, stalking, and harassment both physically and electronically;

f. Interference with access to financial, legal, and emergency support systems.

7. These efforts directly interfered with Plaintiff's lawful participation in state and federal legal proceedings, including

her efforts to report systemic corruption and criminal acts committed by powerful individuals and institutions.

8. Defendants' actions were calculated to silence Plaintiff, derail her cases, and suppress evidence that would implicate government agents and corporate partners in widespread criminal conduct.

9. In doing so, Defendants violated Plaintiff's rights under 18 U.S.C. §1512, constituting unlawful witness tampering, obstruction of justice, and retaliation against a whistleblower.

10. As a result, Plaintiff suffered ongoing harm including emotional trauma, reputational damage, physical illness, loss of legal remedies, and loss of liberty and safety.

11. Plaintiff seeks a finding that Defendants' conduct constitutes a violation of 18 U.S.C. §1512, and requests compensatory and punitive damages, along with declaratory relief acknowledging her protected status as a witness and victim.

**TWENTY-EIGHTH CAUSE OF ACTION**

**Deprivation of Constitutional Rights Under Color of State Law – 42 U.S.C. §1983**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 42 U.S.C. §1983 provides a civil remedy against any person who, under color of state law, deprives another of

rights, privileges, or immunities secured by the Constitution and laws of the United States.

3. Plaintiff alleges that defendants acting under color of law—including LAPD, LAFD, Methuen Police, Lawrence Police, Massachusetts State Police, City of Los Angeles, City of Boston, City of Methuen, and agents or employees of those entities, acted jointly or in concert to deprive her of her Fourth, Fifth, and Fourteenth Amendment rights through illegal surveillance, covert harassment, poisoning, use of directed energy weapons (DEWs)(EMFs), attempted murder, and ongoing gang stalking.

4. These state actors failed to investigate or intervene despite Plaintiff's multiple requests for assistance and reports of harm, contributing to and enabling Plaintiff's torture and persecution.

5. Plaintiff was further deprived of bodily security, the right to be free from unreasonable searches and seizures, and the right to due process.

6. Plaintiff seeks declaratory judgment that her rights were violated, compensatory and punitive damages, and any other relief the Court deems just.

**TWENTY-NINTH CAUSE OF ACTION**

**Conspiracy to Interfere with Civil Rights = 42 U.S.C. §1985**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 42 U.S.C. §1985 prohibits two or more persons from conspiring to deprive someone of their civil rights, particularly to prevent a witness or party from testifying, or to oppress or injure them in retaliation for asserting constitutional protections.

3. Defendants, including individuals in state and federal agencies, coordinated a campaign of retaliation against Plaintiff following her whistleblowing activity involving corruption in the California judicial system and parties connected to Paul Marciano.

4. Plaintiff alleges that defendants conspired to surveil, stalk, poison, and terrorize her across multiple jurisdictions in a coordinated effort to silence, discredit, or eliminate her.

5. This included false pretense interventions by police and fire personnel, disinformation campaigns, and use of directed energy weapons and environmental poisoning.

6. Plaintiff seeks compensatory and punitive damages, declaratory relief, and any other relief deemed just and proper.

**THIRTIETH CAUSE OF ACTION**

**Neglect to Prevent Conspiracy - 42 U.S.C. §1986**

1. 1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 42 U.S.C. §1986 provides that anyone who knows of a § 1985 conspiracy and has the power to prevent it, but fails to do so, is also liable.

3. Federal and state officials, including Pamela Jo Bondi, Robert Bonta, Gavin Newsom, George Gascón, Andrea Joy Campbell, Leah B. Foley and others were placed on notice through Plaintiff's reporting and communications but failed to act.

4. Despite knowledge of ongoing civil rights violations, torture, attempted murder, and gang stalking, these officials did not intervene, investigate, or prevent further harm.

5. Their inaction constitutes a violation of §1986.

6. Plaintiff seeks damages and any other relief the Court deems proper.

**THIRTY-FIRST CAUSE OF ACTION**

**Federal Tort Claims Act – 28 U.S.C. §2671-2680**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Federal Tort Claims Act (FTCA) waives sovereign immunity for tortious acts committed by federal employees acting within the scope of their employment.

3. Plaintiff alleges that federal agents of the CIA, FBI, DHS, and DOJ participated in or allowed the unlawful surveillance, harassment, poisoning, and physical and psychological torture of Plaintiff in retaliation for protected whistleblower activity.

4. These tortious actions caused severe emotional, physical, and financial harm.

5. Plaintiff satisfies jurisdictional prerequisites for bringing a claim under the FTCA and seeks damages arising from these acts.

**THIRTY-SECOND CAUSE OF ACTION**

**Violation of the Electronic Communications Privacy Act - 18 U.S.C. §2510-2523**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Electronic Communications Privacy Act (ECPA) prohibits intentional interception, disclosure, or use of any wire, oral, or electronic communication without consent.

3. Plaintiff's phone calls, emails, devices, and private communications were intercepted and monitored by the FBI, DHS, CIA, and private collaborators, including technology providers like Apple Inc. and Nest Labs Inc.

4. These invasions were not only unauthorized but conducted in furtherance of a broader campaign of retaliation and psychological warfare.

5. Plaintiff seeks injunctive and compensatory relief.

**THIRTY-THIRD CAUSE OF ACTION**

**Violation of the Stored Communications Act – 18 U.S.C. §§2701-2712**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Stored Communications Act prohibits unauthorized access to stored electronic communications.

3. Plaintiff's email accounts, messages, cloud storage, and device logs were accessed or manipulated by agents of the federal government and collaborating corporations, including Apple Inc. and Wells Fargo Bank.

4. Such access contributed to the tracking, targeting, and economic destabilization of Plaintiff.

5. Plaintiff seeks damages for violations of her statutory rights and associated injuries.

**THIRTY-FOURTH CAUSE OF ACTION**

**Violation of the Computer Fraud and Abuse Act – 18 U.S.C. §1030**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The CFAA prohibits unauthorized access to computers or networks to obtain information or cause damage.

3. Plaintiff's devices were hacked, controlled remotely, and subjected to digital sabotage, including through manipulated thermostats and remote EMF exposure.

4. These actions caused data loss, economic harm, and supported physical harm via technological means.

5. Plaintiff seeks actual damages, injunctive relief, and statutory damages as permitted.

**THIRTY-FIFTH CAUSE OF ACTION**

**Fair Housing Act – 42 U.S.C. §3601 et seq.**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. The Fair Housing Act prohibits discrimination, coercion, or retaliation in housing based on protected activity or personal status.

3. Plaintiff was harassed, poisoned, surveilled, and threatened while residing at Zen Hollywood after disclosing her litigation and whistleblower activities.

4. Landlord and management companies, including Jeff Greene, Moss Management, and Concord Ventures, aided by public officials, created an uninhabitable and dangerous environment.

5. Plaintiff seeks compensatory damages and declaratory relief.

**THIRTY-SIXTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. Defendants' conduct in targeting Plaintiff through covert harassment, poisoning, stalking, and psychological warfare was extreme, outrageous, and intentional.

3. Defendants acted with the purpose of inflicting emotional distress and succeeded in doing so, causing severe trauma.

4. Plaintiff seeks general and punitive damages for this intentional tort.

**THIRTY-SEVENTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. In the alternative, Defendants negligently allowed or facilitated acts that foreseeably caused Plaintiff severe emotional distress.

3. This includes failures to act by government officials and negligent conduct by corporations and public utilities.

4. Plaintiff seeks compensatory damages.

**THIRTY-EIGHTH CAUSE OF ACTION**

**Trespass to Property - Common Law Tort**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. Defendants, including employees or agents of SoCal Gas, LADWP, Apple Inc., and others, trespassed by entering Plaintiff's home through technological and physical means, including remote access to devices and infrastructure.

3. These intrusions were unauthorized and intended to harm or surveil Plaintiff.

4. Plaintiff seeks compensatory damages.

**THIRTY-NINTH CAUSE OF ACTION**

**Private Nuisance - Common Law Tort**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. Plaintiff was subjected to constant noise, buzzing, and dangerous environmental conditions that interfered with her quiet enjoyment of her home.

3. Defendants' actions—intentional or reckless—created a private nuisance that injured Plaintiff and her dog.

4. Plaintiff seeks compensatory and injunctive relief.

**FORTIETH CAUSE OF ACTION**

**Violation of 18 U.S.C. §2261A - Interstate Stalking**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §2261A prohibits traveling in interstate commerce or using any facility of interstate commerce to engage in conduct that places a person in reasonable fear of death or serious bodily injury, or causes substantial emotional distress, with the intent to harass, intimidate, or surveil.

3. Defendants, including federal and state government actors, private individuals, and corporate entities, used facilities of interstate commerce—including cell networks, internet infrastructure, and GPS tracking systems—to track, monitor, and stalk Plaintiff across state lines, from California to Massachusetts.

4. These defendants caused Plaintiff to be placed under constant surveillance and subjected her to physical and emotional distress, including attempted poisoning, radiation burns, and threats to her life.

5. The gang stalking and surveillance persisted even after Plaintiff fled California for her safety, clearly demonstrating a coordinated campaign intended to punish, intimidate, and control Plaintiff.

6. Defendants' conduct was willful, malicious, and in direct violation of federal anti-stalking laws intended to protect

victims from precisely this kind of retaliatory and coordinated harassment.

7. As a result of these actions, Plaintiff suffered physical harm, psychological trauma, loss of income, and fear for her life.

8. Plaintiff seeks declaratory judgment, compensatory and punitive damages, and any other relief the Court deems just.

**FORTY-FIRST CAUSE OF ACTION**

**Violation of 5 U.S.C. §2302(b)(8) - Whistleblower Protection**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 5 U.S.C. §2302(b)(8) prohibits retaliation against an employee or applicant for disclosing information they reasonably believe evidences illegal conduct, gross mismanagement, abuse of authority, or a substantial and specific danger to public safety.

3. Plaintiff acted as a whistleblower in 2021 by disclosing information related to judicial corruption and misconduct in ongoing litigation involving high-profile defendants and corporate entities in Los Angeles County.

4. Following her disclosures, Plaintiff was subjected to retaliatory harassment, attempted murder, coordinated gang

stalking, and chemical or EMF attacks both in California and after relocating to Massachusetts.

5. Defendants, including various governmental bodies and officials, engaged in a conspiracy to suppress Plaintiff's disclosures through torture, intimidation, and psychological manipulation.

6. These actions directly violate the Whistleblower Protection statutes designed to shield individuals who report public corruption and systemic abuse.

7. Plaintiff seeks full redress for the retaliatory actions taken against her, including injunctive relief, damages, and protective remedies.

**FORTY-SECOND CAUSE OF ACTION**

**Violation of 47 U.S.C. §605 – Unauthorized Interception and Disclosure of Communications**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

1. 47 U.S.C. §605 prohibits the unauthorized interception and disclosure of wire and radio communications, including electronic transmissions.

3. Defendants, including government actors and technology companies such as Apple Inc. and Nest Labs, Inc., intercepted

Plaintiff's electronic communications without a warrant, including her phone calls, emails, and device transmissions.

4. Plaintiff's internet-connected devices were infiltrated and remotely controlled, and surveillance was conducted on her without legal justification, with the intention of retaliating against and silencing her.

5. Plaintiff experienced numerous digital anomalies and intrusions while residing at Zen Hollywood and afterward, including compromised thermostats, listening devices, and cellular disruptions.

6. These acts constitute a direct violation of federal wiretap and electronic surveillance laws designed to protect privacy.

7. Plaintiff seeks statutory and actual damages, as well as injunctive and declaratory relief.

**FORTY-THIRD CAUSE OF ACTION**

**Violation of Constitutional Rights Under Bivens v. Six Unknown Named Agents**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. Under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), individuals may sue federal officials in their individual capacities for violations of constitutional rights.

3. Federal officials—including FBI agents, DHS employees, DOJ officials, and others, either directly participated in or failed to prevent violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.

4. These violations include unlawful surveillance, deprivation of property without due process, denial of physical safety, and retaliation for protected activity (whistleblowing).

5. The constitutional injuries suffered by Plaintiff are the direct result of the conduct of these officials and are redressable under Bivens.

6. Plaintiff seeks damages and injunctive relief against the federal officials involved.

**FORTY-FOURTH CAUSE OF ACTION**

**Violation of 18 U.S.C. §875 - Interstate Threats**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

1. 18 U.S.C. §875 criminalizes the use of interstate communications to make threats of injury to person or property.

3. Plaintiff was subjected to multiple threats by persons using phones, vehicles, and electronic communications, including being told to "die" and being verbally assaulted in public, including during the garage entrapment incident in Massachusetts. As well as multiple phone calls from unknown

numbers and stalkers telling her "she's crazy" or "get locked up".

4. These threats caused significant emotional distress and were made using facilities of interstate commerce.

5. Defendants intended to instill fear, silence Plaintiff, and deter her from seeking legal redress and pursuing justice as a whistleblower.

6. Plaintiff seeks damages and a finding that such threats constituted a violation of federal law.

**FORTY-FIFTH CAUSE OF ACTION**

**Violation of 18 U.S.C. §1201 – Kidnapping and Unlawful Confinement by Means of Coercion**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

2. 18 U.S.C. §1201 prohibits the unlawful kidnapping or confinement of a person, particularly through fraud or coercion.

3. While residing at Zen Hollywood, Plaintiff was effectively imprisoned through financial sabotage (including bank account restrictions by Wells Fargo), denial of insurance housing requests (Lemonade), and environmental poisoning designed to keep her trapped.

4. Defendants' actions, combined with harassment, false medical accusations, and threats of involuntary psychiatric

holds, were part of a conspiracy to unlawfully restrain Plaintiff and render her physically and mentally incapacitated.

5. This unlawful confinement caused Plaintiff serious emotional and physical harm and violated her federally protected rights.

6. Plaintiff seeks compensatory and punitive damages, and injunctive relief against the continued acts of confinement, coercion, and surveillance.

**FORTY-SIXTH CAUSE OF ACTION**

**Violation of the Eighth Amendment - Cruel and Unusual Punishment**

1. Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

1. The Eighth Amendment to the United States Constitution prohibits the federal government from inflicting "*cruel and unusual punishments.*" While this protection traditionally applies to those convicted of crimes, courts have acknowledged that government actors may violate the Eighth Amendment through extrajudicial acts of inhumane treatment, torture, or abuse—particularly when inflicted as a means of retaliation, coercion, or control.

2. Plaintiff was subjected to a prolonged campaign of psychological and physical torture carried out or enabled by Defendants, including but not limited to federal agencies, state

actors, law enforcement entities, municipal bodies, and private collaborators.

3. The torture included exposure to directed energy weapons (DEWs), electromagnetic radiation, chemical agents or toxins, and continuous gang stalking, all of which were deliberately inflicted in retaliation for Plaintiff's whistleblowing and constitutionally protected speech.

4. Plaintiff was forced to endure sleep deprivation, extreme physical pain, cognitive impairment, and long-term health effects due to these exposures. These acts were committed with malicious intent and were not part of any lawful detention, prosecution, or criminal sanction.

5. Defendants acted either directly or through conspiracy, and in many cases failed in their official capacities to stop or prevent the unlawful infliction of physical and psychological pain upon Plaintiff, despite being aware of the risk and having the authority and obligation to intervene.

6. This conduct, in both its severity and intent, constitutes cruel and unusual punishment under the Eighth Amendment. It exceeds all bounds of decency and human dignity, and was carried out with the deliberate objective of silencing, destabilizing, and ultimately destroying the Plaintiff.

7. As a direct and foreseeable result of these actions, Plaintiff continues to suffer from lasting physical injuries, emotional trauma, neurological harm, medical deterioration, and loss of liberty.

8. Plaintiff seeks all available relief for this violation, including compensatory and punitive damages, declaratory judgment, injunctive relief, and all other relief deemed just and proper by the Court.

**IX. PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief, jointly and severally against all named Defendants:

1. **Compensatory Damages** in an amount to be determined at trial, but not less than one hundred millions dollars ($100,000,000), for physical injuries, emotional distress, economic losses, loss of housing, loss of employment, loss of property, reputational harm, and ongoing psychological trauma.

2. **Punitive Damages** in an amount sufficient to punish Defendants for their willful, malicious, and reckless conduct and to deter similar future conduct by others, pursuant to applicable federal statutes including but not limited to 42 U.S.C. §1983, the Civil RICO Act (18 U.S.C. § 1964(c)), and related provisions.

3. **Statutory Damages** and enhanced penalties where provided by law, including but not limited to:

a. Treble Damages under 18 U.S.C. §1964(c) for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO);

b. Liquidated Damages and other statutory multipliers under applicable consumer protection, fraud, or civil rights statutes;

c. Restitution of any funds, assets, or property wrongfully taken, restricted, or withheld from Plaintiff.

4. **Declaratory Relief**, including a judicial determination that:

a. The actions of the Defendants violated Plaintiff's constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments;

b. The surveillance, harassment, retaliation, and stalking of Plaintiff constituted unlawful conduct under federal civil and criminal law;

c. The Defendants' conduct, both individually and in concert, amounts to a continuing conspiracy to violate Plaintiff's rights and endanger Plaintiff's life and liberty.

5. **Equitable and Injunctive Relief**, including but not limited to:

a. A permanent injunction prohibiting all Defendants, their employees, agents, contractors, and co-conspirators from engaging in any further acts of:

- Surveillance (physical, electronic, or digital) of Plaintiff;
- Harassment, stalking, intimidation, or psychological manipulation of Plaintiff;
- Use or deployment of directed energy weapons (DEWs), electromagnetic frequency (EMF) radiation, or other technologies causing bodily harm;
- Interference with Plaintiff's finances, housing, communications, travel, employment, or access to healthcare;
- Retaliation against Plaintiff for whistleblowing activities or pursuit of legal remedies;
- Unauthorized access to Plaintiff's electronic devices, data, accounts, or communications.

b. An order compelling the Defendants to:

- Cease all covert surveillance, gang stalking, and covert operations involving Plaintiff;
- Disband any joint task forces, public-private partnerships, or surveillance programs targeting Plaintiff;

- Notify all contractors, local partners, and federal/state agencies of the injunction and ensure compliance;
- Provide Plaintiff with an accounting of all surveillance activities, technologies, and data collected or retained;
- Safeguard and preserve all relevant evidence, communications, surveillance logs, financial records, and other materials for discovery and trial.

c. A court-monitored protocol or compliance plan to prevent future violations, with oversight mechanisms and independent reporting.

6. **Attorneys' Fees and Costs**, including litigation costs, expert witness fees, and other necessary expenses of this action, to the extent allowed under applicable law.

7. **Statutory Relief** as provided by all relevant statutes cited in Plaintiff's causes of action, including:

a. 42 U.S.C. §§ 1983, 1985, 1986;

b. 18 U.S.C. §§ 241, 242, 249, 1951-1962, 2261A, and others;

c. Federal Tort Claims Act;

d. Toxic Substances Control Act;

e. Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8);

f. Bivens and other applicable doctrines.

8. Any other relief the Court deems just, proper, and equitable under the circumstances.

Dated: May 4, 2025

Danielle Victor
4 Loring Road, Methuen, MA 01844
978-857-4885
daniellekvictor@gmail.com
THE LIGHT OF GOD NEVER FAILS!

**VERIFICATION**

I, Danielle Victor, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true to my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this day, Sunday, May 4, 2025 at Methuen, Massachusetts, Essex County.

Danielle Victor
Plaintiff Pro, Se
THE LIGHT OF GOD NEVER FAILS!